280 N.J. Super. 533 (1995)
656 A.2d 25
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN ELLIS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 14, 1995.
Decided April 5, 1995.
*537 Before Judges DREIER, VILLANUEVA and WEFING.
*538 Susan L. Reisner, Public Defender, attorney for appellant (Susan Green, Assistant Deputy Public Defender, of counsel and on the brief).
Deborah T. Poritz, Attorney General, attorney for respondent (Deborah Bartolomey, Deputy Attorney General, of counsel and on the the brief).
The opinion of the court was delivered by DREIER, P.J.A.D.
Defendant appeals from convictions of kidnapping, N.J.S.A. 2C:13-1b; aggravated sexual assault, N.J.S.A. 2C:14-2a; aggravated assault, N.J.S.A. 2C:12-1b(4); terroristic threats, N.J.S.A. 2C:12-3a; and possession of a shotgun for an unlawful purpose, N.J.S.A. 2C:39-4a. He was sentenced to concurrent terms of twenty years with a seven-year parole disqualifier for kidnapping; fifteen years with a five-year parole disqualifier for aggravated sexual assault; eighteen months for aggravated assault; four years for terroristic threats and ten years with a four-year parole disqualifier for possession of a shotgun for an unlawful purpose.
On August 12, 1988, defendant pled guilty to kidnapping in the second degree in the Supreme Court of New York, Westchester County and, on October 12, 1988, was sentenced for that crime to a New York State Prison for an indeterminate term of two to six years. Defendant was indicted in New Jersey on November 28, 1989 for first-degree kidnapping and other charges resulting in the New Jersey convictions just noted. He was also acquitted of first-degree aggravated sexual assault and possession of a weapon (screwdriver) for an unlawful purpose. At a pre-trial hearing, defendant's motion to dismiss the kidnapping charge was originally granted, but the charge was then reinstated by the trial judge.
The victim, L.N. and defendant had lived together for approximately ten years, the last five years of which had been acrimonious. In March 1988, she and her children left defendant and *539 moved in with her parents. Defendant was extremely jealous and apparently in the past had been violent with the victim.
Shortly before the incidents giving rise to this case, defendant went to the victim's parents' house to see her, but was driven away at gunpoint by her father. On the morning of June 2, 1988, defendant waited for L.N. to drive by on Central Avenue in Mamaroneck, New York, while she was on her way to work as a housekeeper in Larchmont, New York. Defendant stopped L.N. by firing a shot in the air with a shotgun. He allegedly had first removed the pellets from the shotgun shell. L.N. tried to avoid defendant by putting her car in reverse but could not get away because she was on a one way street and was blocked by traffic.[1] Defendant, while pointing the shotgun at L.N., ran toward her car, opened the driver side door and told her: "Move over, mother-fucker. I'm going to kill you today." L.N. moved into the passenger seat, and defendant took the wheel.
Defendant put the gun in the back seat of the car and drove L.N. to a Connecticut bank so she could withdraw money, telling her, "I'm going to kill you and I'm going to need the money to get away." On the way to find a bank, defendant stopped at a phone, tied the victim's hands and feet with shoelaces from her sneakers and called her employers to inform them she would not be coming to work that day. After defendant returned to the car, he untied L.N. Defendant then found a Connecticut bank that was open, held a screwdriver at the victim's back and forced her to use the cash machine to withdraw $200 from her account.
Defendant instructed L.N. to drive when they reentered the car, and defendant placed the shotgun on the seat between L.N. and himself. Defendant told L.N. to head through New York to New Jersey in case someone had witnessed the abduction and called the New York police (which apparently someone had done). Once *540 they arrived in New Jersey, they drove from place to place and ended up at the Econo Lodge in East Windsor, where defendant had L.N. register for a room after telling her not to make any funny moves. Defendant disassembled his shotgun and left it in the trunk of the car.
In the hotel room, defendant shook the screwdriver at the victim and told her they should get back together. L.N. went along with him because she was afraid of what defendant might do to her if she did not. Defendant then had sexual relations with L.N. Later that same day, they continued to discuss their relationship, leaving the hotel room only to get food. Defendant would periodically get angry and accuse L.N. of seeing other men, and L.N. would tell him that their relationship could not work if he could not believe her. Defendant also called a mutual friend to tell her they were getting back together and had L.N. get on the phone to confirm this assertion. Defendant then again accused L.N. of not being faithful, and L.N. reiterated to defendant that they could not get back together if he insisted upon making those accusations. Defendant then tied L.N. to a table, left the room and returned carrying the gun. Defendant held the gun to the victim's head saying: "I should kill you." After L.N. pleaded with defendant not to kill her and told him that they would get back together, defendant eventually untied L.N. and put away the gun. That night when L.N. awoke to use the bathroom, defendant also got out of bed and stood outside the bathroom door.
The next day, after having breakfast, defendant bought a pair of scissors and had L.N. cut his hair. L.N. did not attempt to escape while she had the scissors because she was afraid of what would happen to her if she did not succeed. L.N. kept defendant calm by complying with him.
After they checked out of the hotel on June 3, 1988, L.N. drove to defendant's friend's home in Stamford, Connecticut so defendant could drop off his gun. Defendant then removed one of the license plates from the victim's car and had L.N. report the plate as stolen in order to get new plates which defendant put on her *541 car. They went to the victim's sister-in-law's home, where defendant had been staying. L.N. and her sister-in-law had not spoken since a disagreement they had three years prior. They remained at the sister-in-law's home until defendant dropped L.N. at work on Monday morning. There, L.N. informed her employer what defendant had done to her. Defendant was arrested on June 6, 1988 by the Mamaroneck, New York police when he returned to pick up L.N. from work.
L.N. testified that the last five out of the ten years she lived with defendant were "hell." She described many incidents where defendant beat her and threatened her and her children. L.N. stated that defendant had become very suspicious of her, watched her every move and tried to control her. L.N. explained how defendant would accuse her of seeing other men and beat her, including one time when he took her to a reservoir and held her head under water.[2]
At a pre-trial hearing, defendant moved to dismiss Count I (kidnapping) on the basis that he had already been convicted of that crime in New York based on the same acts. Also, after an Evid.R. 8(1) (now N.J.R.E. 104(a)) hearing to exclude evidence under Evid.R. 55 (now N.J.R.E. 404), the judge ruled that prior abusive incidents between L.N. and defendant could be introduced in the State's case in chief to provide a foundation for the expert's testimony.
At a pre-trial hearing required by State v. Sands, 76 N.J. 127, 386 A.2d 378 (1978), the judge determined that the defense failed to meet its burden of showing undue prejudice by the admission of defendant's prior convictions to impeach his credibility. This ruling included defendant's New York conviction for abduction of *542 the victim in this case. Thus when defendant testified, the State introduced both defendant's 1985 conviction for carrying a pistol without a permit in a third degree assault and his 1988 conviction for kidnapping in New York State.
Dr. Kabus, a psychologist and clinical director of the Women's Center in Mercer County, testified for the State that the victim's actions were consistent with those of one suffering from Battered Woman's Syndrome. Dr. Kabus based her conclusion on the documents provided to her in the present case, as well as a two and one-half hour interview with L.N.
Defendant raises the following issues on this appeal:
POINT I
THE TRIAL COURT ERRED IN REINSTATING THE NEW JERSEY KIDNAPPING CHARGE BECAUSE JOHN ELLIS WAS CONVICTED AND SENTENCED IN NEW YORK FOR THE "SAME CONDUCT." N.J.S.A. 2C:1-3f.
POINT II
THE DEFENDANT WAS DENIED A FAIR TRIAL BY THE ADMISSION OF EXTENSIVE EVIDENCE OF CRIMES NOT INCLUDED IN THE INDICTMENT, HEARSAY EVIDENCE AND BROAD EXPERT EVIDENCE REGARDING BATTERED WOMAN'S SYNDROME WITHOUT ADEQUATE OR SUFFICIENT LIMITING INSTRUCTIONS. (U.S. CONST. AMEND. XIV; N.J. CONST. (1947), ART. I, PAR. 10). (Partially Raised below).
A. Battered Woman's Syndrome.
B. Other Crimes Evidence.
POINT III
THE UNDULY PREJUDICIAL EFFECT OF ADMITTING DEFENDANT'S NEW YORK KIDNAPPING CONVICTION DENIED DEFENDANT HIS RIGHT TO A FAIR TRIAL AND REQUIRES REVERSAL. (U.S. CONST. AMEND XIV; N.J. CONST. (1947), ART. I, PAR. 10).
POINT IV
THE TRIAL COURT ERRED IN IMPOSING A TWENTY YEAR MAXIMUM SENTENCE FOR FIRST DEGREE KIDNAPPING, WHEN THE FACTS OF THE CASE SUPPORT THE PRESUMPTIVE ORDINARY TERM OF 15 YEARS FOR A FIRST DEGREE OFFENSE.
We will, however, discuss these issues in a different order.

I
Defendant contends in his second point that he was denied a fair trial by the admission of descriptions of his alleged prior assaults *543 against L.N. and of the expert testimony regarding the battered woman's syndrome, both without the proper limiting instructions. The State counters that defendant did in fact receive a fair trial, and the verdict should be affirmed.
According to Evid.R. 6 (now N.J.R.E. 105):
[W]hen relevant evidence is admissible as to one party or for one purpose and is inadmissible as to other parties or for another purpose, the judge shall restrict the evidence to its proper scope and instruct the jury accordingly.[3]
Since defendant failed to request such limiting charges at trial, we will apply the plain error standard of review. R. 1:7-2. Plain error is error that is "clearly capable of producing an unjust result." State v. Macon, 57 N.J. 325, 336, 273 A.2d 1 (1971); R. 2:10-2.

A. Battered Woman's Syndrome
The use of expert testimony to establish Battered Woman's Syndrome has been permitted in New Jersey for over a decade. State v. Kelly, 97 N.J. 178, 209, 478 A.2d 364 (1984). The Court more recently restated the rationale for allowing such testimony as follows:
[E]xpert scientific evidence concerning "battered-woman's syndrome" does not aid a jury in determining whether a defendant had or had not behaved in a given manner on a particular occasion; rather, the evidence enables the jury to overcome common myths or misconceptions that a woman who had been the victim of battering would have surely left the batterer. Thus, the evidence helps the jury to understand the battered woman's state of mind.
[State v. J.Q., 130 N.J. 554, 574, 617 A.2d 1196 (1993).]
Thus, there is no question that expert testimony concerning the Battered Woman's Syndrome can be introduced in a criminal proceeding. But its application is limited to explaining a victim's reactions or late reporting of the events and not as evidence that *544 the crime occurred. Ibid. See also State v. Frost, 242 N.J. Super. 601, 613-614, 577 A.2d 1282 (App.Div.) certif. denied, 127 N.J. 321, 604 A.2d 596 (1990) (evidence of Battered Woman's Syndrome can be used to bolster a victim's credibility in the State's case in chief). This use is similar to proof of a fresh complaint in a sexual assault case. See State v. Hill, 121 N.J. 150, 578 A.2d 370 (1990).
The trial in this matter occurred prior to the New Jersey Supreme Court's decision in State v. J.Q., supra. Therefore, the Supreme Court's statement that "[i]n future cases, we shall assume that the failure of informed defense counsel to object to such expert testimony may reflect a tactical decision by the defense to let the jury hear all available information pertaining to the case" does not necessarily apply. Id. 130 N.J. at 584, 617 A.2d 1196. The matter thus requires further analysis.
In the case before us, Dr. Kabus testified, based on what she was told by L.N., including all of the acts of abuse defendant allegedly inflicted on L.N. over the years, that the victim's failure to attempt an escape from defendant during the period of the abduction was consistent with someone who is suffering from Battered Woman's Syndrome. However, the court did not instruct the jury on the limited use of Dr. Kabus' testimony. The only instruction the judge gave the jury relating to Dr. Kabus concerned assessing her credibility.
THE COURT: Ladies and gentlemen of the jury, Dr. Kabus has been qualified as an expert in accordance with our Rules of Court which permits opinion testimony in some circumstances to aid the jurors in understanding areas which a reasonable person of reasonable experience would not necessarily understand or have an appreciation for. However, you are instructed that the mere fact that the Court has qualified Dr. Kabus as an expert witness does not mean that her testimony is to be treated any differently from that of any other witness. And therefore, you are instructed that you are to judge the testimony of Dr. Kabus in the same manner as you would the testimony of any other witness and ascribe to her testimony the weight and the value which you find is warranted. Thank you.
A similar issue was recently addressed by this court in State v. *545 W.L., 278 N.J. Super. 295, 650 A.2d 1035 (App.Div. 1995)[4]. That case involved the trial court's failure to give proper limiting instructions on the use of expert testimony regarding the Child Sexual Abuse Accommodation Syndrome (CSAAS) evidence. We cited State v. J.Q., supra, for the proposition that expert testimony regarding the syndrome "is not admissible as proof that a child who exhibits the behavior constituting the syndrome was actually abused." Id. 278 N.J. Super. at 301, 650 A.2d 1035. However, we noted that even though the expert was there precluded from testifying concerning his own opinion of the victim's truthfulness, or as to whether her behavioral patterns confirmed that she was abused, "it is clear that counsel and the court did not appreciate the limited role of that evidence as supporting the victim's credibility rather than as proving that the crime against her was committed by defendant." Id. 278 N.J. Super. at 302, 650 A.2d 1035. There, Judge Pressler further stated that "[m]ost egregious was the court's failure to give the jury a limiting instruction as to the use it could make of the CSAAS evidence," and reversed and remanded the matter for a retrial. Ibid.
Similarly, the trial court erred in this case by failing to give the jury limiting instructions on the difference between substantive use and limited use of Dr. Kabus' testimony. The omission of limiting instructions was plain error since the jury certainly could have taken her testimony as evidence of defendant's guilt rather than the victim's credibility. Accordingly, this error was "clearly capable of producing an unjust result," and reversal and remand is warranted.[5]

*546 B. Other-Crimes Evidence
Defendant next argues that the admission of the victim's testimony regarding the history of her abusive relationship with defendant amounted to evidence of other crimes or civil wrongs and was reversible error since it was also admitted without proper limiting instructions. Other-crime evidence is admissible to prove a fact in issue such as a defendant's intent or motive. State v. Cofield, 127 N.J. 328, 336, 605 A.2d 230 (1992); Evid.R. 55(1) (now N.J.R.E. 404(b)). "The underlying danger of admitting other-crime evidence is that the jury may convict the defendant because he is `a bad person in general.'" State v. Cofield, supra, 127 N.J. at 336, 605 A.2d 230 (quoting State v. Gibbons, 105 N.J. 67, 77, 519 A.2d 350 (1987)).
Once evidence of other crimes or civil wrongs is offered by the prosecution, the trial court is required to conduct an Evid.R. 8(1) (now N.J.R.E. 104(a)) hearing, either in limine or at trial, to determine whether the particulars of the other crimes are admissible. State v. Stevens, 222 N.J. Super. 602, 614, 537 A.2d 774 (App.Div. 1988), aff'd, 115 N.J. 289, 558 A.2d 833 (1989). The State must prove by clear and convincing evidence that the other crimes occurred. State v. Harvey, 121 N.J. 407, 433, 581 A.2d 483 (1990), cert. denied, 499 U.S. 931, 111 S.Ct. 1336, 113 L.Ed.2d 268 (1991).
In this case, at the Evid.R. 8(1) hearing, the judge ruled that certain other-crimes evidence was admissible in the State's case in chief to provide a foundation for the expert testimony. The history of abuse between L.N. and defendant related to defendant's motive, common plan and intent and was therefore properly admitted. State v. Carter, 91 N.J. 86, 106, 449 A.2d 1280 (1982).
*547 At trial, L.N. testified in detail concerning the prior acts of abuse defendant had inflicted on her over a period of at least five years and that she had left defendant and been living with her parents at the time the kidnapping occurred. However, the trial court failed to give the jury a limiting charge as to the use of the victim's testimony. Thus, it was quite possible that the jury used the victim's testimony as evidence of defendant's guilt in this case. Therefore, as with the Battered Woman's Syndrome testimony, the court's failure to give a limiting instruction was plain error, and this matter must be reversed and remanded for a new trial. State v. Cofield, supra, 127 N.J. at 342, 605 A.2d 230; Evid.R. 6. Notwithstanding these reasons for reversal, we will consider defendant's remaining points as they may affect the retrial.

II
Defendant argues that the admission of his New York kidnapping conviction deprived him of a fair trial. The State contends that the admission of the prior conviction was proper because it was used to impeach defendant's credibility.
A defendant's prior convictions can be admitted to impeach credibility if the defendant testifies. State v. Sands, supra, 76 N.J. at 147, 386 A.2d 378. However, "the trial court has discretion to bar the admission of prior convictions if it finds that their probative value is outweighed by their prejudice to defendant." State v. Kelly, supra, 97 N.J. at 217, 478 A.2d 364 n. 21 (citing State v. Sands, supra, 76 N.J. at 146, 386 A.2d 378); Evid.R. 4 (now N.J.R.E. 403). Defendant has the burden of showing that the prior conviction is more prejudicial than probative. State v. Kelly, supra, 97 N.J. at 217, 478 A.2d 364 n. 21. Certainly, the introduction of similar prior convictions to impeach a defendant who testifies is more prejudicial than other prior convictions. See State v. Brunson, 132 N.J. 377, 391, 625 A.2d 1085 (1993) (prospective limitation placed on the information to be disclosed to the jury with respect to such similar convictions). Thus, due to the potentially prejudicial nature of the admission of *548 prior convictions for impeachment purposes, the trial court must explain the limited use of such evidence to the jury. State v. Sands, supra, 76 N.J. at 142 n. 3, 386 A.2d n. 378.
In this case, the two prior convictions admitted to impeach defendant were the 1988 New York kidnapping conviction and a 1985 conviction for carrying a weapon without a permit. Defendant objects only to the admission of the New York conviction in his appeal. Although the judge allowed the New York prior conviction to be admitted for impeachment purposes, its prejudicial effect far outweighed its probative value since that conviction arose out of the same circumstances for which defendant was currently being tried. Thus, once the jury heard that defendant pled guilty to kidnapping this victim in New York, it is probable that it determined that defendant was also guilty under New Jersey law for the same kidnapping.
We must determine, however, not merely whether the trial judge's discretion was exercised erroneously, but also whether the error was "clearly capable of producing an unjust result." R. 2:10-2. Had the State sought to introduce defendant's New York guilty plea as substantive evidence, the plea would probably have been admitted under one or more of three hearsay exceptions as substantive evidence of defendant's guilt. Defendant's guilty plea could have been admitted as a prior inconsistent statement, since he testified, Evid.R. 63(1)(a) (N.J.R.E. 803(a)(1)); as an admission, Evid.R. 63(7) (N.J.R.E. 803(b)(1)); and as a statement against defendant's penal interest, Evid.R. 63(10) (N.J.R.E. 803(c)(25)). Thus, the fact that the prior guilty plea was substantively admissible under all three hearsay exceptions diminishes the prejudicial effect of the conviction based on the plea having been mistakenly admitted solely to impeach defendant's credibility. The limited admission of the conviction could therefore be considered harmless error. Of course, on retrial, State v. Brunson, supra, will control the use of the convictions to impeach credibility. It will not, however, impinge on the State's ability to use the New York plea for any proper purpose.

*549 III

Defendant argues that the court erred by reinstating the New Jersey kidnapping charge, since he was previously convicted for the same kidnapping in New York. In the present case, defendant pled guilty on August 12, 1988 in the Supreme Court of New York, Westchester County, to kidnapping in the second degree for the abduction of L.N. Defendant was sentenced to an indeterminate term of two to six years. On August 1, 1991, defendant was convicted in New Jersey of, among other things, kidnapping in the first degree. Defendant argues that New Jersey's interests were served by the New York kidnapping conviction, and therefore his constitutional right against double jeopardy was violated by his being charged with the same kidnapping in New Jersey since it arose from the "same conduct" as the New York conviction.
According to N.J.S.A. 2C:1-3f:
Notwithstanding that territorial jurisdiction may be found under this section, the court may dismiss, hold in abeyance for up to 6 months, or, with the permission of the defendant, place on the inactive list a criminal prosecution under the law of this State where it appears that such action is in the interests of justice because the defendant is being prosecuted for an offense based on the same conduct in another jurisdiction and this State's interest will be adequately served by a prosecution in the other jurisdiction.
The Criminal Law Revision Commission explained the intent of the statute:
In our opinion, the Code would somewhat broaden New Jersey's criminal jurisdiction. In view of the continued and increasing importance of criminal conduct which is interstate in nature and given the protection to the defendant from the provisions of § 2C:1-10 of the Code this seems desirable. We have, however, added in subsection f a unique provision granting discretion to the court to dismiss or take some lesser action under a standard similar to that used in the civil doctrine of forum non conveniens. This should adequately protect against multiple prosecutions while, at the same time, granting a broad power to the state to prosecute where appropriate.
[Final Report of the New Jersey Criminal Law Revision Comm'n, Vol. II: Commentary, § 2C:1-3, at 5 (October 1971) (hereafter Final Report).]
It is well established that "under the Federal Constitution a State may prosecute a defendant for conduct which was already charged in either a federal indictment or an indictment *550 from another state because of the concept of `dual sovereignty.'" State v. King, 215 N.J. Super. 504, 512, 522 A.2d 455 (App.Div. 1987) (citing U.S. v. Lanza, 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314 (1922); Heath v. Alabama, 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985)); State v. Goodman, 92 N.J. 43, 51, 455 A.2d 475 (1983). The "dual sovereignty" doctrine is based on the rationale that "[w]hen a defendant in a single act violates the `peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct `offenses.'" Id. 215 N.J. Super. at 513, 522 A.2d 455 (quoting Heath, supra, 474 U.S. at 88, 106 S.Ct. at 437, 88 L.Ed.2d at 394).[6]
Defendant also requests us apply the test for double jeopardy as stated in Grady v. Corbin, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). However, as the State accurately notes, that case was overturned by United States v. Dixon, ___ U.S. ___, ___, 113 S.Ct. 2849, 2864, 125 L.Ed.2d 556 (1993).
As the State explains, N.J.S.A. 2C:1-3f was instituted to give the court discretion to dismiss a complaint or take some lesser action similar to the standard employed in the doctrine of *551 forum non conveniens. Final Report, supra, at 5. "This should adequately protect against multiple prosecutions while, at the same time, granting a broad power to the state to prosecute where appropriate." Ibid.
To determine whether the trial judge abused her discretion by denying defendant's request to dismiss the kidnapping count, we must look to see if the "State's interests were adequately served" by the New York conviction. N.J.S.A. 2C:1-3f. New York Penal Law 135.20, for which defendant was convicted, states that "[a] person is guilty of kidnapping in the second degree when he abducts another person." "Abducts" is defined as "restrain[ing] a person with intent to prevent his liberation by ... using or threatening to use deadly physical force." New York Penal Law § 135.00(2). For that offense, the New York court sentenced defendant to an indeterminate term of only two to six years.
However, N.J.S.A. 2C:13-1(b) states that
A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a substantial period, with any of the following purposes:
(1) To facilitate commission of any crime or flight thereafter;
(2) To inflict bodily injury on or to terrorize the victim or another;
........
The Mercer County indictment charged defendant with "unlawfully confin[ing] the said L.N. for a substantial period, with purpose to commit aggravated sexual assault or aggravated assault against L.N." These acts occurred not in New York, but in New Jersey. Defendant's New York conviction was based on his act of abducting L.N. in Mamaroneck, New York. The New Jersey kidnapping conviction was based on defendant's confinement of L.N. for the following two days in New Jersey with the intent of committing aggravated sexual assault or aggravated assault on her. The New Jersey kidnapping was proven without having to prove the related but not overlapping New York abduction. *552 The New York offense was subject to proof without reference to the New Jersey conduct. Thus, New Jersey's interests were not vindicated by the New York conviction. The difference in the seriousness of the two offenses is also indicated somewhat by the penalties applicable to each.
We therefore determine that the trial judge did not exceed her discretion by denying defendant's motion to restrain his prosecution for kidnapping.

IV
Defendant contends that the sentence of twenty years with a seven year parole disqualifier for first-degree kidnapping was excessive. He urges that the facts surrounding the kidnapping only support a sentence to the presumptive fifteen year term.
In reviewing a sentence, we as an appellate court must determine: (1) whether the sentencing guidelines were violated; (2) whether the mitigating and aggravating factors were based on competent credible evidence in the record; and (3) whether application of the guidelines makes the sentence so unreasonable as to shock the conscience. State v. Roth, 95 N.J. 334, 364-365, 471 A.2d 370 (1984). We may not substitute our judgment for that of the trial court, and we are "bound to affirm a sentence even if [we] would have arrived at a different result, as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent and credible evidence in the record." State v. O'Donnell, 117 N.J. 210, 215, 564 A.2d 1202 (1989) (citing State v. Jarbath, 114 N.J. 394, 400-401, 555 A.2d 559 (1989)); State v. Roth, supra, 95 N.J. at 364-365, 471 A.2d 370.
N.J.S.A. 2C:13-1c(1) provides, in pertinent part:
Except as provided in paragraph (2) of this subsection, kidnapping is a crime of the first degree and upon conviction thereof, a person may, notwithstanding the provisions of paragraph (1) of subsection a. of N.J.S. 2C:43-6, be sentenced to an ordinary term of imprisonment between 15 and 30 years.
As defendant concedes, "sentenc[ing] within this range is discretionary, [so] the court remains free to sentence to the presumptive *553 term found in 2C:44-1f(1)(a) or to a sentence within the range provided by 2C:43-6a(1)." Cannel, New Jersey Criminal Code Annotated comment 4 on N.J.S.A. 2C:13-1 (1994). Although defendant was not sentenced to the minimum fifteen years, he also was not sentenced to the maximum thirty-year term. The trial court's imposition of the presumptive twenty-year sentence was warranted since the court also explained the aggravating and mitigating factors on the record. Furthermore, because this kidnapping was a Graves Act crime, it carried a parole ineligibility term of between one-third and one-half of the sentence imposed. N.J.S.A. 2C:43-6c. The parole disqualifier of seven years was well within that range.
On the facts then before the court, we see no sentencing error. Of course, after any retrial, the facts may be presented differently.
Defendant's convictions are reversed, and this matter is remanded to the Law Division for such further proceedings as may be appropriate.
NOTES
[1] The victim's and defendant's versions of events of the next four days are decidedly different. Since defendant was convicted, we must assume that the jury accepted the version recounted by L.N.
[2] Defendant refuted almost all of the victim's testimony. Defendant denied beating L.N. He claimed that the incident on June 2, 1988 grew out of a dispute he had with L.N. shortly before that, which ended with the victim's father chasing defendant from the house with a gun. Defendant admitted to stopping the victim's car with a gun but claims that over the weekend, L.N. consented to the events that occurred, including the sexual relations.
[3] Although N.J.R.E. 105 requires that a party request such a limiting instruction, "[t]he trial judge should give a limiting instruction sua sponte where it appears necessary to avoid the potential for prejudice." Biunno, Current N.J. Rules of Evidence, quoting the 1991 Supreme Court Committee Comment at 132. However, since at the time of the trial Evid.R. 6 was still in effect, that rule controlled.
[4] Although the facts in W.L. deal with the admission of expert testimony regarding Child Sexual Abuse Accommodation Syndrome, treatment of the admission of expert testimony on that subject has been likened to that concerning Battered Woman's Syndrome. See State v. J.Q., supra, 130 N.J. at 574, 617 A.2d 1196.
[5] Some of the events described by Dr. Kabus if supported by the victim's own testimony to avoid the hearsay bar, may have qualified for admission to prove other facts in issue in this case under Evid.R. 55 (N.J.R.E. 404(b)). But, as is noted under the next subpoint, the judge's failure to give proper limiting instructions concerning other crimes or civil wrongs is a separate basis for reversal in this case.
[6] Relations between federal and New Jersey prosecutions are governed in the State courts by N.J.S.A. 2C:1-11. See State v. Walters, 279 N.J. Super. 626, 631, 653 A.2d 1176, 1179 (App.Div. 1995) (slip op. at 4-7). N.J.S.A. 2C:1-11 was initially intended to encompass prosecutions in other states as well as in the federal district courts, but the statute was amended between the time of the 1971 study and its enaction. See Cannel, New Jersey Criminal Code Annotated, comments on N.J.S.A. 2C:1-11 (1994).

Defendant concedes that under the dual sovereignty doctrine, double jeopardy "does not bar prosecutions by separate sovereigns where both have jurisdiction." However, in the absence of case law interpreting N.J.S.A. 2C:1-3f, defendant asks us to apply the constraints of N.J.S.A. 2C:1-11a, which bars subsequent state prosecutions for the "same conduct" for which a defendant was already convicted of in a federal court. While N.J.S.A. 2C:1-11a does not directly apply, it may in the appropriate case be persuasive as an approach to an interstate conflict. The statute has been viewed "as representing a drastic curtailment of the `dual sovereignty' doctrine." State v. Walters, supra, 279 N.J. Super. at 631, 653 A.2d at 1179, quoting State v. Goodman, 92 N.J. 43, 51, 455 A.2d 475 (1983). As will be explained, we need not make further reference to the federal-state statute in this case.