NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2692-12T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RODNEY J. MILES, a/k/a
JAMAL D. ALLEN,

    Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

December 15, 2015

APPELLATE DIVISION

Submitted September 9, 2014 — Remanded October 14, 2014
Resubmitted December 8, 2015 — Decided December 15, 2015

Before Judges Fisher, Accurso and Manahan.

On appeal from Superior Court of New Jersey,
Law Division, Camden County, Indictment No.
11-04-00786.

Joseph E. Krakora, Public Defender, attorney
for appellant (Brian P. Keenan, Assistant
Deputy Public Defender, of counsel and on
the brief).

John J. Hoffman, Acting Attorney General,
attorney for respondent (James C. Jones,
Deputy Attorney General, on the brief).

The opinion of the court was delivered by

MANAHAN, J.A.D.

This matter returns to us after a remand to the Law

Division for a determination of the circumstances under which

the initial municipal court charge of simple possession was

amended to loitering, whether the prosecutor was involved in the downgrade, and whether controlling decisions of law barred the second prosecution. State v. Miles, No. A-2692-12 (App. Div. October 14, 2014) (slip op. at 8-10). As we conclude, after application of the "same evidence" test, that defendant's second prosecution was barred on grounds of double jeopardy, we reverse.

We briefly set forth the facts and background from our prior opinion:

> On October 15, 2010, defendant was arrested in the City of Camden during an undercover drug operation. Defendant was charged in a warrant complaint with possession of a CDS with intent to distribute on or near school property, N.J.S.A. 2C:35-7 and N.J.S.A. 2C:35-5(b)(12). Defendant was also charged in a summons complaint with the disorderly persons offense of possession of fifty grams or less of marijuana, N.J.S.A. 2C:35-10(a). It is undisputed that these charges arose from the same course of conduct.
>
> On April 4, 2011, the grand jury returned an indictment charging defendant with fourth-degree possession of a CDS with intent to distribute, N.J.S.A. 2C:35-5(b)(12), and third-degree possession of a CDS with intent to distribute within 1,000 feet of school property, N.J.S.A. 2C:35-7. On September 14, 2011, defendant appeared pro se in municipal court via video conference from the county jail.[1] Prior to that proceeding, the disorderly persons offense of possession of a CDS was amended to the offense of loitering to possess marijuana, N.J.S.A. 2C:33-2(b)(1). The

following colloquy took place between the judge and defendant:

Q. All right. You're charged on October 15, 2010, with loitering to possess marijuana at 27th and Washington Street in Camden.

A. Yes, sir.

Q. Do you wish to have an attorney in this matter?

A. No, sir. What - - they got me - - can I ask you something? This is a municipal charge, right, Your Honor?

Q. Yes.

A. Well, why they got me going to Superior Court for this, Your Honor? That's why I said I don't understand.

Q. No, no, you're not going to Superior Court for child support, sir.

A. No, no, no, they had me - -

Q. Sir.

A. Okay.

Q. Trust me. I am not going to argue with you.

A. No, I'm not arguing.

Q. I'm not going to argue with you.

A. Oh, okay.

3                                    A-2692-12T1

Q. You're charged with loitering to possess marijuana in Camden, October 15, 2010. It'll be a $500 fine plus mandatory costs. Do you understand the penalties?

A. Yes, sir.

Q. Do you wish to have an attorney in this matter?

A. No, sir.

Q. Do you wish to have a trial?

A. No, sir.

Q. Do you want to plead guilty today?

A. Yes, sir.

Q. Are you pleading guilty because you are guilty?

A. Yes, sir.

Q. Are you doing it voluntarily?

A. Yes, sir.

Q. What's your plea to the charge, sir, guilty or not guilty?
A. I plead guilty, sir.

Q. Did you loiter to possess marijuana at 27th and Washington Street in Camden on October 15, 2010?

A. Yes, I did, Your Honor.

A-2692-12T1

Q. Factual basis, plea, finding of guilty will be entered. $500 fine, $30 costs, $50 Violent Crime penalty, $75 [S]afe [N]eighborhood and [S]treet. Camden on or before December 6, 9:30 a.m., $25 a month. Okay?

A. Yes, Your Honor.

Q. Thank you.

Defendant moved to dismiss the indictment on double jeopardy grounds. Defendant argued in support of the motion that double jeopardy existed because he pled guilty to an offense that was related to the same conduct. The judge denied the motion finding the second prosecution was not barred because it required additional proofs.

_____

1During the course of the video conference, defendant admitted that he uses Rodney Miles as an alias but that David Allen is "his real name." Defendant was incarceratedon an unrelated charge related to nonpayment of child support.

[Miles, supra, slip op. at 1-4.]

Defendant also entered a conditional plea to count two of the indictment. Pursuant to the plea bargain, he was sentenced to probation. Defendant appealed the judge's denial of the

motion to dismiss the indictment,[1] and we remanded for further proceedings. Miles, supra, slip op. at 10.

During the remand hearing, the prosecutor informed the Law Division judge that when municipal charges are pending that arise out of the same event as did these criminal charges, "we ask the municipal court not to go forward, we pull those complaints up to our office." Despite this procedure, there was no information provided by the State at the remand hearing whether in this case the disorderly persons charge was "pulled" or, if it had been, why it remained in the municipal court system. The prosecutor represented that in this case, his office did not appear in municipal court nor was his office notified of the proceeding. At the conclusion of the hearing, the judge determined that the prosecutor played no role in the downgrade of the municipal court charge.

The judge further held there was no basis to find that defendant "did not understand that the serious offense" of violating the school-zone statute "would continue to be prosecuted, notwithstanding the efforts of the municipal court judge, who was attempting to expedite [defendant's] release from incarceration." He determined that the second prosecution was

---

[1] The conditional plea preserved defendant's right to appeal from the adverse determination of the pretrial motion pursuant to Rule 3:9-3(f).

not precluded by notions of fundamental fairness, because defendant "was fully cognizant" of the pending Superior Court proceedings "in light of his several appearances" in Superior Court on those charges.

Defendant argues that the State either implicitly or explicitly consented to the amendment of the municipal charge and, because of its involvement, there is no basis to preclude a finding that double jeopardy barred further prosecution based on the "same conduct." Defendant further argues the doctrine of fundamental fairness should bar further prosecution, since the transcripts demonstrate he "in fact believe[d]" that his municipal plea resolved the matter, and that his belief was reasonable because he was "firmly told" by the court "that the matter was in fact before the municipal court for adjudication."

The State argues that double jeopardy did not attach because the municipal court's unilateral amendment of the charge "amounts to a legal nullity." The State further argues that the municipal court no longer had jurisdiction to process the municipal complaint upon defendant's indictment.[2]

---

[2] During the remand hearing, it was noted that it is a regular practice for the municipal court judge conducting the "video" hearing to sua sponte downgrade charges in an effort to resolve the open charges and effectuate the release of a defendant.

The State also argues that the record supports the Law Division judge's decision that the second prosecution was not precluded by principles of fundamental fairness, as there was no evidence of harassment or oppression by the State. Further, the State contends that defendant could not have reasonably expected that the original plea offer of five years' imprisonment with a fifteen-month parole disqualifier could be resolved by a $500 fine, and points out that defendant appeared in Superior Court on the indictable charges five times, including the day before the municipal court date.

I.

Actions taken by a municipal court on matters beyond its jurisdiction are a legal nullity that cannot form the basis for a later plea of double jeopardy. State v. Le Jambre, 42 N.J. 315, 319 (1964). Here, defendant was not charged in municipal court with a crime. Defendant was charged with the possession of less than fifty grams of marijuana in violation of N.J.S.A. 2C:35-10(a)(4), which specifies that possession of that quantity of marijuana is a disorderly persons offense. Disorderly persons offenses, as designated by statute, are not crimes within the meaning of the New Jersey Constitution. N.J.S.A. 2C:1-4(b). They afford no right to indictment or trial by jury, and conviction of such an offense may not "give rise to any

disability or legal disadvantage based on conviction of a crime." <u>Ibid.</u> The statutory jurisdiction of the municipal court includes disorderly persons offenses. <u>R.</u> 7:1.

Although the municipal court judge misunderstood the status of defendant's drug-related charges pending in the Superior Court, we reject the State's argument that the return of the indictment deprived the municipal court of jurisdiction over the disorderly persons offense. <u>See</u> <u>State v. Labato</u>, 7 <u>N.J.</u> 137, 151 (1951) (prosecutor's objection to proceeding on disorderly persons offense in former city police court did not deprive the police court of jurisdiction over that offense, even when indictment on the same facts was returned two weeks after the conviction).

## II.

<u>Rule</u> 3:15-3 states:

> (a) Joinder of Criminal Offense and Lesser Related Infraction.
>
> > (1) Except as provided in paragraph (b), the court shall join any pending non-indictable complaint for trial with a criminal offense based on the same conduct or arising from the same episode.
> >
> > . . . .
>
> (c) Consequence of Failure to Join. In no event shall failure to join as required in paragraph (a) be deemed to constitute

> grounds for barring a subsequent prosecution of the complaint except as required by statute or by the Federal or State Constitutions.

It is without dispute that defendant's municipal court charge was required to be joined and resolved with his indictable offenses then pending in Superior Court. This did not occur for reasons that, even after remand, remain unclear. However, as the Rule states, defendant's conviction in municipal court of a disorderly persons offense did not bar subsequent prosecution on the indictable unless that prosecution was barred by constitutional protections such as the Double Jeopardy Clause.

### III.

Defendant's principal argument is that his "school-zone" conviction was barred on double jeopardy grounds. The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb[.]" U.S. Const. amend. V. "The parallel provision in the State Constitution is Article I, paragraph 11, which provides: '[n]o person shall, after acquittal, be tried for the same offense.'" State v. DeLuca, 108 N.J. 98, 102, cert. denied, 484 U.S. 944, 108 S. Ct. 331, 98 L. Ed. 2d 358 (1987).

When reviewing double jeopardy claims, the issue is "'whether the second prosecution is for the same offense involved in the first.'" State v. Yoskowitz, 116 N.J. 679, 689 (quoting DeLuca, supra, 108 N.J. at 102). In State v. Salter, 425 N.J. Super. 504, 518-19 (App. Div. 2012), we explained:

> The longstanding rule for determining whether a second prosecution is for the "same offense" was expressed in Blockburger v. United States, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). In that case, "[t]he Court stated that 'where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.'"
>
> . . . [O]ur Supreme Court slightly expanded the analysis, noting that the question is "whether the evidence actually used to establish guilt in the first prosecution is identical to that that will be used in the second prosecution." . . . "[I]n DeLuca, the Court 'established that a second prosecution will be barred if either the "elements" test or the "evidence" test is satisfied.'" "If the same evidence used in the first prosecution is the sole evidence in the second, the prosecution of the second offense is barred."
>
> [(internal citations omitted).]

The protections against double jeopardy afforded by the New Jersey Constitution are co-extensive with those guaranteed by the Federal Constitution. State v. Schubert, 212 N.J. 295, 304 (2012). Three separate constitutional safeguards are

incorporated within its protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." State v. Dively, 92 N.J. 573, 578 (1983) (quoting North Carolina v. Pearce, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076, 23 L. Ed. 2d 656, 664-65 (1969)).

Here, the factual scenario presented and the applicable statute implicates the protection against a second prosecution after conviction as well as whether multiple punishments may be imposed for the same offense.

We commence our discussion by addressing the school-zone statute. N.J.S.A. 2C:35-7(a) and (c) state in relevant part:

> a. Any person who violates subsection a. of [N.J.S.A.] 2C:35-5 by distributing, dispensing or possessing with intent to distribute a controlled dangerous substance or controlled substance analog while on any school property used for school purposes which is owned by or leased to any elementary or secondary school or school board, or within 1,000 feet of such school property or a school bus, or while on any school bus, is guilty of a crime of the third degree and shall, except as provided in [N.J.S.A.] 2C:35-12, be sentenced by the court to a term of imprisonment. Where the violation involves less than one ounce of marijuana, the term of imprisonment shall include the imposition of a minimum term which shall be fixed at, or between, one-third and one-half of the sentence imposed, or one year, whichever is greater, during

which the defendant shall be ineligible for parole. . . .

. . . .

c. Notwithstanding the provisions of [N.J.S.A.] 2C:1-8 or any other provisions of law, a conviction arising under this section shall not merge with a conviction for a violation of subsection a. of [N.J.S.A.] 2C:35-5 (manufacturing, distributing or dispensing) or [N.J.S.A.] 2C:35-6 (employing a juvenile in a drug distribution scheme).

New Jersey applies a two-part test for determining whether multiple punishments constitute double jeopardy. State v. Maldonado, 137 N.J. 536, 580 (1994). First, the court should determine whether the Legislature intended that a defendant incur multiple punishments for the conduct. Ibid. Next, if the legislative intent is unclear, the court will proceed to apply the test set forth in Blockburger, supra, 284 U.S. at 304, 52 S. Ct. at 182, 76 L. Ed. at 309. Ibid.

In State v. Dillihay, 127 N.J. 42, 50-52 (1992), the Court held that double jeopardy principles preclude multiple punishments for a defendant convicted of both N.J.S.A. 2C:35-5 (Section 5 offenses) and, also, for the crime of violating N.J.S.A. 2C:35-7 (Section 7 offenses) based on the fact that the Section 5 offense occurred in a school zone. The anti-merger provision of N.J.S.A. 2C:35-7(c) allowed for multiple convictions on both statutes. Dillihay, supra, 127 N.J. at 50-

52. However, it was held that the two offenses were "the same" under the <u>Blockburger</u> test "because the State must prove all elements of Section 5 offense in order to establish a violation of Section 7," and the Section 5 offense does not require proof of any additional facts required to establish the school-zone offense. <u>Id.</u> at 51.

The Court determined that, although convictions for first and second-degree crimes based on violations of <u>N.J.S.A.</u> 2C:35-5 must merge into a third-degree crime for violating the school-zone statute, a defendant convicted of a drug offense in a school zone must be "sentenced to no less than the mandatory minimum sentence provided in the school-zone statute." <u>Id.</u> at 55. That result would reflect the Legislature's clear intent to impose an enhanced punishment upon defendants whose violations of Section 5 occur in a school zone. <u>Ibid.</u>

## A.

In pleading to the amended disorderly persons offense, defendant admitted that he "loiter[ed] to possess marijuana." In his Superior Court plea to violation of <u>N.J.S.A.</u> 2C:35-7, he admitted he possessed the drug with the intent to distribute it, in violation of <u>N.J.S.A.</u> 2C:35-5(b)(12).

Pursuant to <u>Dillihay</u>, the original fourth-degree predicate charge of violating <u>N.J.S.A.</u> 2C:35-5(b)(12) would have merged

with his conviction for the Section 7 offense. Therefore, had he been convicted of both indictable offenses, he could have been subjected only to a single punishment. Moreover, had he been convicted in municipal court of the original disorderly offense with which he was charged, his conviction for N.J.S.A. 2C:35-7 would have been barred by the same double jeopardy principles that require merger of Section 5 offenses with the Section 7 school-zone crimes.

In application of the Blockburger "elements" test, we conclude the school-zone crime and the loitering offense to which defendant pled guilty are not the same offense for purpose of double jeopardy because they each contain different elements from the other. The loitering statute penalizes persons who loiter in a public place for the purpose of obtaining or distributing drugs and who exhibit conduct manifesting that purpose. N.J.S.A. 2C:33-2.1(b). Section (c) of the statute emphasizes that an essential element of the offense is that the conduct occur in a public place. N.J.S.A. 2C:33-2.1(c). The statute describes conduct that "may" be deemed adequate to establish the defendant's purpose in loitering, including repeated: (1) beckoning or stopping motorists or pedestrians "in a public place"; (2) passing or receiving objects from motorists or pedestrians "in a public place"; or (3) circling in a motor

vehicle and passing or receiving an object from a person "in a public place."  Ibid.

A conviction under N.J.S.A. 2C:35-7 requires proof that the violation occurred in a school zone as an element of the offense.  State v. Baynes, 148 N.J. 434, 449 (1997).  The elements of the crime are: "(1) possession of a controlled dangerous substance, (2) with the purposeful or knowing intent to distribute the substance, and (3) within 1000 feet of any school property."  State v. Gregory, 220 N.J. 413, 420 (2015).

In contrast, the loitering statute does not require as an element of the offense that the possession or distribution of drugs occurred in a public place within a school zone.  Although it is an affirmative defense to prosecution under the school-zone statute if the prohibited conduct took place entirely in a private residence, that defense applies only when, at the time it occurred, no one younger than seventeen years old was present and the offense did not involve distribution or possession with intent to distribute or dispense a drug for profit.  N.J.S.A. 2C:35-7(e).  The distribution or sale for profit of drugs in a private residence located within a school zone is generally prohibited under the statute.  N.J.S.A. 2C:35-7.

Defendant's conviction under N.J.S.A. 2C:35-7 also required as an element of the crime that he possessed the drugs with the

intent to distribute them.  N.J.S.A. 2C:35-7(a). This element is not required for conviction of the disorderly persons offense of loitering in a public place.  N.J.S.A. 2C:33-2.1.

Accordingly, we conclude the "elements" test does not bar defendant's second prosecution.

B.

In determining whether a successive prosecution would be barred, New Jersey courts have also applied the "same evidence" test.  DeLuca, supra, 108 N.J. at 108-09; Yoskowitz, supra, 116 N.J. at 689-92.[3]  Under the "same evidence" test, as expressed by the United States Supreme Court in Illinois v. Vitale, 447 U.S. 410, 100 S. Ct. 2260, 65 L. Ed. 2d 228 (1980), the Double Jeopardy clause will preclude a later prosecution of a greater offense where a defendant already has been convicted of a lesser offense: (1) when "the lesser-included offense require[d] no proof beyond that required in the greater offense," and (2) "also the proof of the greater offense must establish the lesser offense."  Dively, supra, 92 N.J. at 581.  The "same evidence" test may be applied to determine if a defendant's guilty plea

---

[3] The motion judge mistakenly referred to the Blockburger "same elements" test as the "same conduct" test.  The term "same conduct" test is generally used to mean the alternative to Blockburger, also called the "same evidence" test.  See, e.g., United States v. Dixon, 509 U.S. 688, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993); State v. Colon, 374 N.J. Super. 199, 206 (App. Div. 2005).

precludes a second prosecution based on the same evidence that supported the plea to the first offense. State v. Hand, 416 N.J. Super. 622, 629 (App. Div. 2010).

Here, the "evidence" that defendant violated the school-zone statute was based on the allegation that he was located at 27th and Washington Streets when he possessed the marijuana with the intent to distribute it and that location was within 1000 feet of a school. Although defendant did not admit to his location in his plea to the indictable offense, proof of his location was evidence required to prove the crime.

The defendant's location in a public place was the same evidence required to find him guilty of the disorderly persons offense of loitering. Since proof of defendant's location was critical to a conviction for both charges, the proof relied on by the State to establish defendant's conviction for possession within a school zone would also establish his violation of the loitering statute. Defendant's conviction on the loitering statute required no proof beyond that. Therefore, applying the same evidence test would preclude defendant's subsequent prosecution under N.J.S.A. 2C:35-7.

We note that in 1993 the United States Supreme Court rejected the "same evidence" test as an alternate to the Blockburger test. Dixon, supra, 509 U.S. at 703-12, 113 S. Ct.

18

2859-64, 125 L. Ed. 2d at 572-78 (overruling Grady v. Corbin, 495 U.S. 508, 110 S. Ct. 2084, 109 L. Ed. 2d 548 (1990), and its antecedents, which included Vitale, supra, 447 U.S. at 410, 100 S. Ct. at 2260, 65 L. Ed. 2d at 228).

In Colon, supra, 374 N.J. Super. at 206, we recognized that the test had been "repudiated by Dixon." However, we "declined to find, in the absence of dispositive precedent to the contrary, that the 'same [evidence]' test was no longer applicable to a determination of double jeopardy under the New Jersey Constitution." Ibid.

Similarly, in State v. Capak, 271 N.J. Super. 397, 402-04 (App. Div.), certif. denied, 137 N.J. 164 (1994), we recognized Dixon's holding, and noted that New Jersey constitutional protections are co-extensive with federal protections. Despite that recognition, we stated, "to the extent DeLuca and Yoskowitz may be understood to embody state constitutional principles, until our Supreme Court holds otherwise," we would continue to apply the "same [evidence]" test. Id. at 403. Further, this court hewed to that position when we applied the "same evidence" test in Hand, supra, 416 N.J. Super. 627-31.

This court, however, has also declined to apply the "same evidence" test in light of Dixon. See State v. Kelly, 406 N.J. Super. 332, 350 (App. Div. 2009) (rejecting defendant's double

jeopardy arguments, in part, because they were based on <u>Grady v. Corbin</u>, which was overruled by the United States Supreme Court in <u>Dixon</u>), <u>aff'd on other grounds</u>, <u>State v. Kelly</u>, 201 <u>N.J.</u> 471 (2010); <u>State v. Ellis</u>, 280 <u>N.J. Super.</u> 533, 550 (App. Div. 1995) (declining to apply "same evidence" test from <u>Grady v. Corbin</u> because it had been overruled).

In reaching our determination, we adopt the rationale utilized in <u>Hand</u>, <u>supra</u>, 416 <u>N.J. Super.</u> at 631, where we rejected the "more restrictive approach" of <u>Dixon</u>:

> As an intermediate appellate court, we are therefore confronted with the difficult determination of whether to adhere to the Court's existing interpretation of federal and state double jeopardy protections, set forth in [<u>Yoskowitz</u>, <u>supra</u>, 116 <u>N.J.</u> at 563,] <u>DeLuca</u> and <u>Dively</u>, or without significant precedent to suggest that the Court would narrow or restrict the flexibility of its view of double jeopardy to accord with newly-established federal constitutional law, to forecast that it would do so in a state constitutional context. We find the latter course to be presumptuous, and, accordingly, follow <u>Capak</u> in holding that such a determination must be made by the Supreme Court, not by us. We accordingly view defendant's proofs in light of the "same [evidence]" test in determining whether state constitutional proscriptions against double jeopardy have been violated.
>
> [(quoting <u>Colon</u>, <u>supra</u>, 374 <u>N.J. Super.</u> at 216).]

The State argues that its lack of involvement in the municipal court proceedings militates against a finding of double jeopardy on fundamental fairness grounds.[4] First, we disagree that prosecutorial involvement in the proceedings is requisite to such a finding. Second, while it may be that the State had no knowledge of the proceedings that resulted in defendant's municipal court plea, the State should have been aware that a disorderly persons offense based upon the same conduct had been lodged against the defendant. Yet, even on remand, the State could offer no explanation why the offense was not joined with the indictable charges. The failure to join the offense resulted in the offense's amendment and disposition through a municipal court process of which the State was aware, even if the prosecutor was not noticed for the proceeding in question.

The procedure that allowed the municipal court to amend the charges produced an unfair outcome for defendant. As we noted,

---

[4] In regard to its applicability to either party, fundamental fairness has been held to be a "settled repository of rights of the accused." State v. Abbati, 99 N.J. 418, 430 (1985). Even if we harbored doubts about whether the doctrine of fundamental fairness may be invoked by other than the accused, we need not decide that question because we conclude that the doctrine — if considered here from the State's point of view — does not warrant the outcome the State has urged.

a plea to the original charge of possession as a lesser-included offense would have resulted in the unequivocal bar of the indictable charges.

Additionally, we disagree that defendant should have known his municipal court plea was not intended to resolve the indictable charges. A fair reading of the transcript evinces defendant's efforts to inform the municipal court judge of the Superior Court charges. At worst, the uncounseled defendant was misled and, at best, defendant was understandably confused. Through no fault of his own he accepted the plea offered by the municipal court judge and was sentenced.

Notwithstanding our determination on the issues of prosecutorial involvement, fairness and notice to defendant, we conclude that "fundamental fairness" would not bar the second prosecution.

The fundamental fairness doctrine derives from an implied judicial authority to create appropriate and just remedies and to assure the efficient administration of the criminal justice system. Abbati, supra, 99 N.J. at 427. It has been "extrapolated from or implied in other constitutional guarantees" that nevertheless are insufficient to protect individual defendants harassed by arbitrary government action. Doe v. Poritz, 142 N.J. 1, 109 (1995) (quoting Yoskowitz, supra,

116 N.J. at 731 (Handler, J., dissenting)). The doctrine has been applied when "[s]omeone was being subjected to potentially unfair treatment and there was no explicit statutory or constitutional protection to be invoked." Ibid.

Our Supreme Court has cautioned that the doctrine is to be applied "sparingly" to the most compelling circumstances where, in the absence of judicial intervention, a defendant will be subject to oppression, harassment or egregious deprivation. State v. Saavedra, 222 N.J. 39, 67 (2015); State v. Miller, 216 N.J. 40, 71-72 (2013), cert. denied, ___ U.S. ___, 134 S. Ct. 1329, 188 L. Ed. 2d 339 (2014); Yoskowitz, supra, 116 N.J. at 712. It has been applied only in the clearest of cases. See State v. Maisonet, 166 N.J. 9, 13-21 (2001) (defendant was forced to appear for a jury trial over several days in a dirty and disheveled condition having been denied access to soap, running water, toothpaste or a comb); Doe, supra, 142 N.J. at 108-09 (the doctrine of fundamental fairness required the institution of procedural protections to determine classification of convicted sex offenders will be subject to community supervision and notification provisions); State v. Tropea, 78 N.J. 309, 311-16 (1978) (fundamental fairness precluded remand for retrial when State has failed to introduce evidence of essential element of proof); State v. Baker, 310

N.J. Super. 128, 138 (App. Div. 1998) (fundamental fairness precluded State from seeking death penalty based on deliberate prosecutorial misconduct in seizing juror notes and releasing them to the press after conviction but before penalty phase had commenced), certif. denied, 174 N.J. 192 (2002).

Had we been required to decide the applicability of the fundamental fairness doctrine as essential to the resolution of this appeal, we would conclude that the facts presented do not qualify as the type of indisputably unfair circumstances that have garnered judicial support for application of the doctrine.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION