SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. Rodney J. Miles** (A-72-15) (077035)

**Argued January 4, 2017 -- Decided May 16, 2017**

**Timpone, J., writing for a majority of the Court.**

In this appeal, the Court clarifies the methodology to be used in analyzing whether two offenses are the "same offense" for double jeopardy purposes. Since the 1980s, New Jersey courts have applied both the same-evidence test and the same-elements test articulated in Blockburger v. United States, 284 U.S. 299 (1932), in double jeopardy determinations. A finding that offenses met either test resulted in double jeopardy protection for the defendant.

In October 2010, the Camden County police arrested defendant for selling marijuana to an undercover police officer. Defendant was charged in a warrant complaint with possession of marijuana with intent to distribute and possession of a controlled dangerous substance (CDS) with intent to distribute on or within 1000 feet of a school property. In a separate municipal summons, defendant was charged with the disorderly-persons offense of possession of fifty grams or less of marijuana. Those charges arose from the same attempted sale.

A grand jury returned an indictment charging defendant with the offenses in the warrant complaint. Defendant then appeared pro se in municipal court to resolve the disorderly-persons offense. At some point before that video proceeding, the original municipal charge was amended to a different disorderly-persons offense— loitering to possess marijuana. Defendant asked the municipal court judge, "why they got me going to Superior Court for this, Your Honor?" The judge then responded that defendant was "not going to Superior Court for this," but rather for an unrelated child support issue. Defendant then pled guilty to loitering to possess marijuana.

Thereafter, defendant moved to dismiss the Superior Court indictment on double-jeopardy grounds, arguing that prosecution on the possession charges was barred because he had already pled guilty to an offense that arose from the same conduct. The Superior Court denied defendant's motion to dismiss, reasoning that prosecution on the indicted charges was not barred because it required proof of an additional element—proximity to a school. Defendant pled guilty to possession of CDS with intent to distribute within 1000 feet of a school (the school-zone charge), but preserved his right to appeal the denial of the motion to dismiss.

On appeal, the Appellate Division remanded for a finding on the circumstances surrounding the amendment of the disorderly-persons offense. The panel noted that a plea to the original municipal charge, instead of the amended one, could have led to a different result after applying the double-jeopardy analysis.

On remand, the Superior Court found no direct evidence as to the circumstances surrounding the amendment, and the prosecutor represented that his office was not informed of defendant's municipal court proceedings. Despite defendant's expressed confusion during the municipal court plea hearing, the Superior Court concluded that the school-zone prosecution was not precluded by notions of fundamental fairness.

Defendant appealed again, arguing that double jeopardy barred prosecution on the school-zone charge. The Appellate Division agreed, finding that, although the second prosecution was not barred under the same-elements test, it was barred under the same-evidence test. 443 N.J. Super. 212, 220, 225-27 (App. Div. 2015).

The Court granted the State's petition for certification. 225 N.J. 339 (2016).

**HELD**: New Jersey now joins the majority of jurisdictions in returning to the Blockburger same-elements test as the sole test for determining what constitutes the "same offense" for purposes of double jeopardy. In the interest of justice, the Court applied both the same-elements test and the now-replaced same-evidence test in this case; going forward, for offenses committed after the issuance of this opinion, the same-elements test will serve as the singular framework for determining whether two charges are the same offense for purposes of double-jeopardy analysis.

1

1. Here, the municipal court had jurisdiction to resolve defendant's disorderly-persons charge pursuant to N.J.S.A. 2B:12-17, and failure to join does not automatically bar subsequent prosecution. For judicial efficiency and fairness to defendants, the Court urges careful coordination between the municipal courts and county prosecutors. (pp. 8-10)

2. The Court has consistently interpreted the State Constitution's double-jeopardy protection as coextensive with the guarantee of the federal Constitution. A prime concern when reviewing a double-jeopardy claim is whether the second prosecution is for the same offense involved in the first. (pp. 10-11)

3. The United States Supreme Court first announced its test for determining whether a second prosecution is for the same offense in Blockburger, supra, 284 U.S. at 304: If each statute at issue requires proof of an element that the other does not, they do not constitute the same offense and a second prosecution may proceed. This has come to be known as the same-elements test. (pp. 11-12)

4. The Court read the language in Illinois v. Vitale, 447 U.S. 410, 421 (1980), as creating an alternative to Blockburger's same-elements test—the same-evidence test. The United States Supreme Court reached the same conclusion in Grady v. Corbin, 495 U.S. 508, 510 (1990), but revised its position in United States v. Dixon, 509 U.S. 688, 704, 708-09 (1993), in which it deemed the same-evidence test unworkable and reinstated the Blockburger same-elements test as the sole measure of whether two offenses constitute the same offense. (pp. 12-14)

5. Since Dixon, the majority of states have similarly ruled that the Blockburger same-elements test sets forth the proper test for determining whether two charges are the same offense. Until this case, the Court has not had occasion to reevaluate double-jeopardy jurisprudence in light of Dixon's return to the same-elements test. As a result, appellate panels have split over whether the same-evidence test still applies in New Jersey. (pp. 14-16)

6. The Court now adopts the same-elements test as the sole double-jeopardy analysis, thereby realigning New Jersey law with federal law. The same-elements test is effortlessly applied at early stages of prosecution; it is capable of producing uniform, predictable results; and it aids defendants by reducing multiple court appearances. Rule 3:15-1(b) bars subsequent prosecutions for indictable offenses, and failure by the prosecution to properly join indictable offenses bars a subsequent prosecution. State v. Williams, 172 N.J. 361, 368 (2002). The Court recognizes a narrow circumstance where it is possible that neither the same-elements test nor the rule in Williams would prevent a second prosecution; if those unlikely events unfolded, the second prosecution might well be barred on joinder or fundamental fairness grounds. As a further safeguard, the Court invites the Supreme Court Committee on Criminal Practice to review the joinder rule and consider adding non-indictable offenses to it. (pp. 16-21)

7. Because the decision establishes a new rule of law, the Court applies the new singular same-elements standard prospectively to offenses committed after the date of this opinion. In fairness to defendant, the Court conducts double-jeopardy analysis using both the same-elements test and the now-removed same-evidence test. Application of the Blockburger same-elements test would lead to the conclusion that loitering to possess marijuana is not the same offense as possession within a school zone. Each offense contains at least one element not required to prove the other. Under the same-evidence test, however, successive prosecution for the school-zone offense is prohibited because it is based on the same evidence that supported the plea and conviction on the loitering offense. (pp. 21-23)

8. For offenses committed after the issuance of this opinion, the same-elements test will serve as the singular framework for determining whether two charges are the same offense for double-jeopardy analysis. (p. 23)

The judgment of the Appellate Division is **AFFIRMED**. Defendant's conviction and sentence on the school-zone offense are vacated.

**JUSTICE ALBIN, DISSENTING,** expresses the view that majority's new rule cannot be squared with the principles of fairness that previously animated New Jersey's double-jeopardy jurisprudence. According to Justice Albin, the majority's reversion to the same-elements test will allow the State to pursue repeated prosecutions for the same offense despite an earlier conviction or acquittal.

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE's opinion. JUSTICE ALBIN filed a separate, dissenting opinion in which JUSTICE LaVECCHIA joins.**

2

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

        v.

RODNEY J. MILES (a/k/a JAMAL
D. ALLEN),

     Defendant-Respondent.


        Argued January 4, 2017 – Decided May 16, 2017

        On appeal from and certification to the
        Superior Court, Appellate Division, whose
        opinion is reported at 443 N.J. Super. 212
        (App. Div. 2015).

        Joseph A. Glyn, Deputy Attorney General,
        argued the cause for appellant (Christopher
        S. Porrino, Attorney General of New Jersey,
        attorney).

        Brian P. Keenan, Assistant Deputy Public
        Defender, argued the cause for respondent
        (Joseph E. Krakora, Public Defender,
        attorney).

    JUSTICE TIMPONE delivered the opinion of the Court.

    In this appeal, we clarify the methodology to be used in analyzing whether two offenses are the "same offense" for double jeopardy purposes.  Since the 1980s, we have applied both the same-evidence test and the same-elements test in double jeopardy determinations.  A finding that offenses met either test resulted in double jeopardy protection for the defendant.  In

1

contrast, the federal courts and most state jurisdictions apply only the same-elements test, as articulated by the United States Supreme Court in Blockburger v. United States, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

We now join the majority of jurisdictions in returning to the Blockburger same-elements test as the sole test for determining what constitutes the "same offense" for purposes of double jeopardy.  Here, because we are changing course, we examine the facts through the additional lens of the now-replaced same-evidence test as a matter of fairness to defendant Rodney Miles.

I.

In October 2010, the Camden County police arrested defendant for selling marijuana to an undercover police officer on the corner of 27th and Washington Streets in Camden, New Jersey.  Defendant was charged in a warrant complaint with possession of marijuana with intent to distribute, in violation of N.J.S.A. 2C:35-5(b)(12), and possession of a controlled dangerous substance (CDS) with intent to distribute on or within 1000 feet of a school property, in violation of N.J.S.A. 2C:35-7.  In a separate municipal summons, defendant was charged with the disorderly-persons offense of possession of fifty grams or less of marijuana, in violation of N.J.S.A. 2C:35-10(a)(4).  Those charges arose from the same attempted sale.

2

A Camden County grand jury returned an indictment charging defendant with the offenses in the warrant complaint. Defendant then appeared pro se in municipal court to resolve the disorderly-persons offense charged in the municipal summons. Defendant appeared via video conference from the county jail, where he was being held on an unrelated child-support charge. At some point before that video proceeding, the original municipal charge was amended to a different disorderly-persons offense -- loitering to possess marijuana, in violation of N.J.S.A. 2C:33-2.1(b)(1). Confusion ensued as evidenced by the following colloquy between the judge and defendant at the municipal court proceeding:

> Q. All right. You're charged on October 15, 2010, with loitering to possess marijuana at 27th and Washington Street in Camden.
>
> A. Yes, sir.
>
> Q. Do you wish to have an attorney in this matter?
>
> A. No, sir. What -- they got me -- can I ask you something? This is a municipal charge, right, Your Honor?
>
> Q. Yes.
>
> A. Well, why they got me going to Superior Court for this, Your Honor? That's why I said I don't understand.
>
> Q. No, no, you're not going to Superior Court for this. You're going to Superior Court for child support, sir.

3

A. No, no, no, they had me --

Q. Sir.

A. Okay.

Q. Trust me. I am not going to argue with you.

A. No, I'm not arguing.

Q. I'm not going to argue with you.

A. Oh, okay.

Q. You're charged with loitering to possess marijuana in Camden, October 15, 2010. It'll be a $500 fine plus mandatory costs. Do you understand the penalties?

A. Yes, sir.

Defendant then pled guilty to the charge of loitering to possess marijuana.

Thereafter, defendant moved to dismiss the Superior Court indictment on double-jeopardy grounds, arguing that prosecution on the possession charges was barred because he had already pled guilty to an offense that arose from the same conduct. Despite some puzzlement as to why the municipal court had amended the disorderly-persons offense, the Superior Court denied defendant's motion to dismiss. The Superior Court reasoned that prosecution on the indicted charges was not barred because it required proof of an additional element -- proximity to a school. Defendant pled guilty to possession of CDS with intent to distribute within 1000 feet of a school (the school-zone

4

charge), but preserved his right to appeal the denial of the motion to dismiss.

On appeal, the Appellate Division remanded for a finding on the circumstances surrounding the amendment on the disorderly-persons offense, specifically focusing on whether the prosecutor was involved in amending the charge. The panel noted that a plea to the original municipal charge, instead of the amended one, could have led to a different result after applying the double-jeopardy analysis.

On remand, the Superior Court found no direct evidence as to the circumstances surrounding the amendment, but learned that it was typical in municipal court to amend charges where appropriate to help defendants avoid more serious penalties and fines. During the remand hearing, the prosecutor represented that his office was not informed of defendant's municipal court proceedings. The court, having determined that the prosecutor played no role in the amendment of the municipal court charge, found nothing atypical in the amendment process.

Despite defendant's expressed confusion during the municipal court plea hearing, the Superior Court found him to be "fully cognizant" of the pending Superior Court prosecution because he previously appeared in that court on four separate occasions for pretrial conferences on the indicted charges. The

5

court concluded that the school-zone prosecution was not precluded by notions of fundamental fairness.

Defendant appealed again, arguing that because the remand hearing revealed no definitive information on the circumstances of the amendment, the municipal court had jurisdiction over the disorderly-persons offense and, as a result, double jeopardy barred prosecution on the school-zone charge. The Appellate Division agreed. State v. Miles, 443 N.J. Super. 212, 220, 227 (App. Div. 2015). The panel recognized, however, that the Appellate Division was divided as to how to determine whether two offenses are the same offense for double-jeopardy purposes. Id. at 226-27. It explained that some panels have adhered to current New Jersey law, under which subsequent prosecutions are barred under either of two tests -- the same-elements test or the same-evidence test -- and other panels have adopted the United States Supreme Court's exclusive use of the same-elements test. Ibid. Having analyzed the facts under both tests, the Appellate Division found that, although the second prosecution was not barred under the same-elements test, it was barred under the same-evidence test. Id. at 225-27.

The State filed a petition for certification, which we granted. 225 N.J. 339 (2016).

II.

6

The State's arguments are threefold: (1) the municipal court lacked jurisdiction to unilaterally adjudicate defendant's disorderly-persons offense after the grand jury returned the indictment on the other charges; (2) the municipal court's action was beyond its jurisdiction and is thus a legal nullity which may not serve as the basis for defendant's double jeopardy claim; and (3) in the alternative, if the municipal court is found to have had jurisdiction, the State urges this Court to eliminate the same-evidence test. Under the same-elements test then, the State advocates that the school-zone prosecution is not barred by double jeopardy because both statutes at issue require proof of an element that the other does not.

Defendant, in turn, contends that: (1) the municipal court had statutory jurisdiction over the disorderly-persons offense, thereby validating his claim that the school-zone prosecution constituted double jeopardy; and (2) even under a flexible application of the same-elements test, it is clear that the loitering offense does not require any more proof than the school-zone offense.

III.

Because the issue presented is purely a question of law, we review this case de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). When an appellate court reviews a trial court's analysis of a legal issue, it does not

7

owe any special deference to the trial court's legal interpretation. Ibid. "When a question of law is at stake, the appellate court must apply the law as it understands it." State v. Mann, 203 N.J. 328, 337 (2010).

IV.

The threshold issue in this case is whether the municipal court had jurisdiction to resolve the disorderly-persons offense. Without jurisdiction, its adjudication of the disorderly-persons offense is a "legal nullity" and may not serve as the basis for defendant's double-jeopardy claim. See State v. Le Jambre, 42 N.J. 315, 319 (1964). If it is a legal nullity, the State's prosecution of the school-zone charge would automatically be permitted, and there would be no need to reach the double-jeopardy issue. If the municipal court did have jurisdiction over the disorderly-persons offense, however, prosecution on the school-zone offense would be permitted only if it would not place defendant in double jeopardy.

Municipal courts have limited jurisdiction over criminal cases; they may only conduct proceedings in a criminal case before indictment. N.J.S.A. 2B:12-19(a). Once an indictment is returned, "[a] municipal court shall not discharge a person charged with an indictable offense without first giving the county prosecutor notice and an opportunity to be heard." N.J.S.A. 2B:12-19(b).

8

On the other hand, municipal courts have unlimited jurisdiction over disorderly-persons offenses, N.J.S.A. 2B:12-17(c), which "are not crimes within the meaning of the Constitution of this State," N.J.S.A. 2C:1-4(b). Rule 7.1 delineates the scope of municipal court jurisdiction. That rule also provides that disorderly-persons offenses are within the statutory jurisdiction of municipal courts.

Rule 3:15-3(a)(1), a companion rule to Rule 7.1, directs municipal courts to "join any pending non-indictable complaint for trial with a criminal offense based on the same conduct or arising from the same episode." Subsection (c) of that rule, however, explicitly provides that failure to join does not bar a subsequent prosecution on an indictable offense, unless that prosecution is barred by constitutional protections, such as double jeopardy. R. 3:15-3(c). Nothing in the rule dictates that failure to join when joinder is appropriate strips a municipal court of its statutorily granted authority over disorderly-persons offenses.

Here, defendant was charged in municipal court with a disorderly-persons offense, not with a criminal offense. N.J.S.A. 2B:12-19's requirements therefore do not apply in the present case. The municipal court had jurisdiction to resolve defendant's disorderly-persons charge pursuant to N.J.S.A. 2B:12-17. Because Rule 3:15-3(c) limits the consequences for a

9

municipal court's failure to join non-indictable offenses, moreover, failure to join does not automatically bar subsequent prosecution on the indictable offense so long as double-jeopardy concerns are allayed.

For judicial efficiency and fairness to defendants, we urge careful coordination between the municipal courts and county prosecutors. There will always be outlier situations when unintentional events get the better of the system. Here, confusion bred more confusion, causing a failure to join the municipal charge with the indictable offenses. Nevertheless, we have said before that a "breakdown in communications between state and municipal officials forms no justification for depriving an accused person of his right to plead double jeopardy." State v. Dively, 92 N.J. 573, 589 (1983) (quoting Robinson v. Neil, 366 F. Supp. 924, 929 (E.D. Tenn. 1973)).

Having determined that the municipal court had jurisdiction, we next review whether the subsequent prosecution on the school-zone charge placed defendant in double jeopardy.

V.

A.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The New Jersey Constitution contains a similar provision: "No

10

person shall, after acquittal, be tried for the same offense."
N.J. Const. art. I, ¶ 11. This Court has consistently
interpreted the State Constitution's double-jeopardy protection
as coextensive with the guarantee of the federal Constitution.
State v. Schubert, 212 N.J. 295, 304 (2012); Dively, supra, 92
N.J. at 578; State v. Barnes, 84 N.J. 362, 370 (1980).

The Double Jeopardy Clause contains three protections for
defendants. It protects against (1) "a second prosecution for
the same offense after acquittal," (2)"a second prosecution for
the same offense after conviction," and (3) "multiple
punishments for the same offense." North Carolina v. Pearce,
395 U.S. 711, 717, 89 S. Ct. 2072, 2076, 23 L. Ed. 2d 656, 664-
65 (1969). Common to all three protections is the concept of
"same offense." Accordingly, a prime concern when reviewing a
double-jeopardy claim is "whether the second prosecution is for
the same offense involved in the first." State v. Yoskowitz,
116 N.J. 679, 689 (1989) (quoting State v. De Luca, 108 N.J. 98,
102, cert. denied, 484 U.S. 944, 108 S. Ct. 331, 98 L. Ed. 2d
358 (1987)).

The United States Supreme Court first announced its test
for determining whether a second prosecution is for the same
offense in Blockburger, supra, 284 U.S. at 304, 52 S. Ct. at
182, 76 L. Ed. at 309. The Court stated that "where the same
act or transaction constitutes a violation of two distinct

11

statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Ibid. In other words, if each statute at issue requires proof of an element that the other does not, they do not constitute the same offense and a second prosecution may proceed. Ibid. This test has come to be known as the same-elements test.

The Blockburger same-elements test was the exclusive test for same-offense determinations until the United States Supreme Court decided Illinois v. Vitale, 447 U.S. 410, 421, 100 S. Ct. 2260, 2267, 65 L. Ed. 2d 228, 238 (1980). There, the United States Supreme Court indicated that facts could possibly require more than a mechanical analysis of the elements of the two statutes. Ibid. The United States Supreme Court contemplated that a second prosecution could be barred if it relied on the same evidence used to prove an earlier charge. Ibid. This language "created controversy among state and federal courts over whether the traditional Blockburger test ha[d] been expanded." Yoskowitz, supra, 116 N.J. at 690.

This Court read the language in Vitale as creating an alternative to Blockburger's same-elements test -- the same-evidence test. See De Luca, supra, 108 N.J. at 107; Dively, supra, 92 N.J. at 581-83. The United States Supreme Court reached the same conclusion a few years later and officially

12

adopted the suggestion it set forth in Vitale. Grady v. Corbin, 495 U.S. 508, 510, 110 S. Ct. 2084, 2087, 109 L. Ed. 2d 548, 557 (1990).

Soon thereafter, the United States Supreme Court reevaluated and revised its position, holding that the same-evidence test was "wholly inconsistent with earlier Supreme Court precedent and with the clear common-law understanding of double jeopardy." United States v. Dixon, 509 U.S. 688, 704, 113 S. Ct. 2849, 2860, 125 L. Ed. 2d 556, 573 (1993). Deeming the same-evidence test unworkable, the Court reinstated the Blockburger same-elements test as the sole measure of whether two offenses constitute the same offense for double jeopardy purposes. Id. at 708-09, 113 S. Ct. at 2864, 125 L. Ed. 2d at 577. The Court specifically rejected its dicta in Vitale, which suggested a same-evidence test, stating "[n]o Justice, the Vitale dissenters included, has ever construed this passage as answering, rather than simply raising, the question on which we later granted certiorari in Grady." Id. at 707, 113 S. Ct. at 2862, 125 L. Ed. 2d at 575.

It took a mere three years for the United States Supreme Court to steer away from the same-evidence test; it quickly found that the test would be unworkable without crafting a number of exceptions to supplement it. See United States v. Felix, 503 U.S. 378, 389-91, 112 S. Ct. 1377, 1384-85, 118 L.

13

Ed. 2d 25, 36-37 (1992) (creating exception for conspiracy under which prior prosecution for substantive offense would not preclude prosecution for conspiracy to commit that offense). Fearing the necessity of more exceptions further denuding the same-evidence test, the Dixon Court eliminated it altogether in favor of the same-elements test.  Dixon, supra, 509 U.S. at 710, 113 S. Ct. at 2863, 125 L. Ed. 2d at 577.

Since Dixon, the majority of states have similarly ruled that the Blockburger same-elements test sets forth the proper test for determining whether two charges are the same offense. See, e.g., State v. Leighton, 645 So. 2d 354, 355 (Ala. Crim. App. 1994); State v. Sanders, 68 P.3d 434, 448 (Ariz. Ct. App.); Hughes v. State, 66 S.W.3d 645, 652 (Ark. 2002); People v. Allen, 868 P.2d 379, 380 (Colo. 1994); State v. Alvarez, 778 A.2d 938, 945-46 (Conn. 2001), cert. denied, 534 U.S. 1138, 122 S. Ct. 1086, 151 L. Ed. 2d 985 (2002); Forrest v. State, 721 A.2d 1271, 1278 (Del. 1999); Tyree v. United States, 629 A.2d 20, 21-22 (D.C. 1993); Dodd v. State, 522 S.E.2d 538, 539-40 (Ga. Ct. App. 1999); Kelso v. State, 961 So. 2d 277, 281-82 (Fla. 2007); People v. Sienkiewicz, 802 N.E.2d 767, 770-71 (Ill. 2003); State v. Sharkey, 574 N.W.2d 6, 8 (Iowa 1997); State v. Schoonover, 133 P.3d 48, 62 (Kan. 2006); Commonwealth v. Burge, 947 S.W.2d 805, 811 (Ky. 1996); In re Michael W., 768 A.2d 684, 690 (Md. 2001); People v. Ream, 750 N.W.2d 536, 544 (Mich.

14

2008); Powell v. State, 806 So. 2d 1069, 1074 (Miss. 2001); People v. Latham, 631 N.E.2d 83, 85 (N.Y. 1994); State v. Winkler, 663 N.W.2d 102, 108 (Neb. 2003); State v. Rodriguez, 116 P.3d 92, 101 (N.M. 2005); State v. Zima, 806 N.E.2d 542, 548 (Ohio 2004); Commonwealth v. Caufman, 662 A.2d 1050, 1052 (Pa. 1995); State v. Easler, 489 S.E.2d 617, 623 (S.C. 1997); Flores v. Texas, 906 S.W.2d 133 (Tex. 1995); Coleman v. Commonwealth, 539 S.E.2d 732, 733-35 (Va. 2001); State v. Gocken, 896 P.2d 1267, 1270-73 (Wash. 1995); State v. Kurzawa, 509 N.W.2d 712, 720 (Wis.), cert. denied, 512 U.S. 1222, 114 S. Ct. 2712, 129 L. Ed. 2d 839 (1994); Sweets v. State, 307 P.3d 860, 875 (Wyo. 2013).

Until this case, we have not had occasion to reevaluate our double-jeopardy jurisprudence in light of Dixon's return to the same-elements test. As a result, appellate panels have split over whether the same-evidence test still applies in New Jersey. Compare State v. Colon, 374 N.J. Super. 199, 216 (App. Div. 2005) (declining to find, in absence of instruction from this Court, that same-evidence test was no longer applicable); State v. Capak, 271 N.J. Super. 397, 402-04 (App. Div.) (recognizing Dixon's holding, but deciding to apply same-evidence test until this Court holds otherwise), certif. denied, 137 N.J. 164 (1994), with State v. Kelly, 406 N.J. Super. 332, 350 (App. Div. 2009) (rejecting defendant's same-evidence arguments based on

15

<u>Grady</u>, which was overruled by <u>Dixon</u>), <u>aff'd on other grounds</u>, 201 <u>N.J.</u> 471 (2010); <u>State v. Ellis</u>, 280 <u>N.J. Super.</u> 533, 550 (App. Div. 1995) (refusing to apply same-evidence test overruled by <u>Dixon</u>).

B.

We resolve the question of which test applies in our courts by adopting the same-elements test as the sole double-jeopardy analysis, thereby realigning New Jersey law with federal law. We no longer recognize the same-evidence test as a measure of whether two offenses constitute the same offense.

In reaching our conclusion, we are guided by the conundrums created by the same-evidence test as they played out before the United States Supreme Court. Rather than grafting exception upon exception onto a test that would eventually fall under its own weight, we embrace the same-elements test in its stead. The same-elements test analyzes the elements of the competing statutes to determine if each contains an element the other does not. If each statute contains at least one unique element, the subsequent prosecution may proceed.

The benefits of the same-elements test are noteworthy: the test is effortlessly applied at early stages of prosecution; it is capable of producing uniform, predictable results; and it aids defendants by reducing multiple court appearances. By contrast, under the same-evidence test, a court cannot determine

16

whether two charges constitute the same offense until later in the process, after the State has proffered the evidence used to support each claim. "[S]urely such a procedure is inconsistent with the Double Jeopardy Clause, which was specifically designed to protect the citizen from multiple trials." Vitale, supra, 447 U.S. at 426, 100 S. Ct. at 2270, 65 L. Ed. 2d at 242 (Stevens, J., dissenting).

Further, adoption of this test corrects our reliance on the now-repudiated dicta in Vitale in support of our addition of the same-evidence test to our double-jeopardy framework. See Dively, supra, 92 N.J. at 581.

Finally, protections abound for defendants, enshrined in our Constitution, court rules, and statutes. See, e.g., N.J.S.A. 2C 1-8 (limiting prosecutions, trials, and convictions when a defendant's conduct constitutes more than one offense); N.J.S.A. 2C:1-10(a)(1) (barring subsequent prosecution for a violation of a different statutory provision, where the former prosecution resulted in an acquittal and the subsequent prosecution is for an offense for which defendant could have been convicted on the first prosecution). For example, Court Rule 3:15-1(b) states that,

> [e]xcept as provided by R. 3:15-2(b), a defendant shall not be subject to separate trials for multiple criminal offenses based on the same conduct or arising from the same episode, if such offenses are known to the

17

> appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction and venue of a single court.

This Court has long held that "[i]f the offenses are not joined [under that rule], the omitted offense may not be further prosecuted." State v. Williams, 172 N.J. 361, 368 (2002) (citing State v. Gregory, 66 N.J. 510, 522-23 (1975)). That rule bars subsequent prosecutions for indictable offenses. Nothing in this opinion changes that joinder requirement.

Rule 3:15-1(b) is titled "Trial of Indictments or Accusations Together." It commands that every crime -- an offense defined by the criminal code or by any other statute of this State for which a sentence of imprisonment in excess of six months is authorized, N.J.S.A. 2C:1-4 -- known to the prosecutor at the time of the commencement of the first trial must be joined. As noted above, this Court has underscored that failure by the prosecution to properly join indictable offenses bars a subsequent prosecution. Williams, supra, 172 N.J. at 368. In contrast, Rule 3:15-3 is titled "Trial of Criminal Offenses and Lesser, Related Infractions." Those two rules have different titles and address different subject matter, and there is no indication from the text of the rules that they can, or must, be read together.

We recognize a narrow circumstance where it is possible that neither the same-elements test nor the rule in Williams would prevent a second prosecution:  where a defendant is acquitted in Superior Court and the prosecution then files disorderly persons charges in municipal court relating to essentially the same conduct.  Because Williams only bars a subsequent prosecution on another indictable offense and disorderly persons offenses are not indictable, the second prosecution might not be barred.  As the State noted at oral argument, these situations are admittedly rare, because the State has little incentive to pursue a disorderly persons offense after acquittal on an indictable offense predicated on the same facts.  The dissent nonetheless conjures up one hypothetical after another, which simply do not reflect reality.  If those unlikely events unfolded, however, the second prosecution might well be barred on joinder or fundamental fairness grounds.  See State v. Saavedra, 222 N.J. 39, 67-68 (2015).  As a further safeguard, we invite the Supreme Court Committee on Criminal Practice to review the joinder rule and consider adding non-indictable offenses to it.

What the dissent mistakes for efficiency is actually certainty.  A defendant's interest in avoiding a second prosecution should not be in jeopardy solely based on the ability of the defense or State to characterize evidence as

19

necessary for a conviction.  The same-evidence test's reliance on a case-by-case approach creates the potential for wildly different results in cases with similar facts.  While efficiency is certainly a by-product of today's decision, the same-elements test provides equal protection to defendants who are similarly situated by combatting uncertainty in results.

We acknowledge that no double-jeopardy test will cover the entire spectrum of possible situations to come before this Court.  The same-elements test is not a cure-all.  It becomes part of the fabric of our double-jeopardy protections, joined with the Due Process Clause and Sixth Amendment Jury Trial clause, creating a fulsome array of safeguards for criminal defendants.  See Akhil Reed Amar, Double Jeopardy Law Made Simple, 106 Yale L.J. 1807, 1809 (1997) ("[T]he [United States Supreme] Court has tied itself into knots because it has failed to carefully disentangle the Double Jeopardy, Due Process, and Jury Trial Clauses.  As a result, some defendants today are getting windfalls -- needless and dangerous 'get out of jail free' cards -- while other defendants are getting less than they constitutionally deserve.").

Given those factors, we see no reason to deviate from the well-established tradition of keeping our double-jeopardy law coextensive with federal law.  Here, we are faced with the difficult task of choosing among competing precedents:  our line

20

of cases holding that our double jeopardy case law is coextensive with the federal law or our cases supporting the same-evidence test.  Because we believe there is good cause and a special justification to do so, see State v. Witt, 223 N.J. 409, 415 (2015), we remove the same-evidence test from future consideration in resolving double jeopardy questions.

Because our decision establishes a new rule of law, we apply the new singular same-elements standard prospectively to offenses committed after the date of this opinion.  See, e.g., Witt, supra, 223 N.J. at 450.  Here, in fairness to defendant, we conduct our double-jeopardy analysis using both the same-elements test and the now-removed same-evidence test because that was the legal landscape at the time he was charged.  We now apply those principles to determine whether prosecution on defendant's school-zone charge violated double jeopardy.

VI.

The facts of this case implicate two of the three protections of the Double Jeopardy Clause:  protection against a second prosecution after conviction and protection against multiple punishments for the same offense.  The two offenses at issue are loitering to possess marijuana, N.J.S.A. 2C:33-2.1(b), and possession with the intent to distribute within a school-zone, N.J.S.A. 2C:35-7(a).  The loitering statute provides that a person commits a disorderly-persons offense if:

> (1) he wanders, remains or prowls in a public place with the purpose of unlawfully obtaining or distributing a controlled dangerous substance . . . and (2) engages in conduct that . . . manifests a purpose to obtain or distribute a controlled dangerous substance or controlled dangerous substance analog.
>
> [N.J.S.A. 2C:33-2.1(b).]

In comparison, a violation of the school-zone statute occurs when a person "distribut[es], dispens[es] or possess[es] with intent to distribute a controlled dangerous substance . . . while on any school property used for school purposes . . . or within 1,000 feet of such school property." N.J.S.A. 2C:35-7(a).

Application of the Blockburger same-elements test to the two statutes would lead us to conclude that loitering to possess marijuana is not the same offense as possession within a school zone. Loitering requires proof that defendant's conduct occurred in a public place, an element not required for proof of the school-zone offense. The school-zone offense, on the other hand, requires proof of purpose to distribute and possession within 1000 feet of a school zone -- two elements not required for the proof of loitering. Thus, each offense contains at least one element not required to prove the other.

Under the same-evidence test, however, we find that defendant's successive prosecution for the school-zone offense is prohibited because it is based on the same evidence that

22

supported the plea and conviction on the loitering offense.  The evidence necessary to support defendant's loitering charge was his presence at 27th and Washington Streets, a public street corner, where he intended to distribute marijuana.  Similarly, the evidence of the school-zone charge was defendant's location at 27th and Washington Streets -- within 1000 feet of a school building -- where he possessed marijuana with the intent to distribute it.  Clearly, the State relied on the same evidence to obtain defendant's conviction on the school-zone charge that was used as the basis for defendant's plea on the loitering charge.  Accordingly, the two charges constitute the same offense under the same-evidence test, and the school-zone prosecution was improper.  We therefore affirm the judgment of the Appellate Division barring defendant's second prosecution as a violation of the double jeopardy clause.

In the interest of justice, we applied both analyses here; going forward, for offenses committed after the issuance of this opinion, we hold that the same-elements test will serve as the singular framework for determining whether two charges are in fact the same offense for purposes of double-jeopardy analysis.

## VII.

The judgment of the Appellate Division is affirmed. Defendant's conviction and sentence on the school-zone offense are vacated.

23

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE's opinion. JUSTICE ALBIN filed a separate, dissenting opinion in which JUSTICE LaVECCHIA joins.

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

       v.

RODNEY J. MILES (a/k/a JAMAL
D. ALLEN),

    Defendant-Respondent.

    JUSTICE ALBIN dissenting.

    More than forty years ago in State v. Gregory, this Court exercised its broad administrative power under the New Jersey Constitution to provide greater double-jeopardy protection to the people of New Jersey than afforded by the United States Constitution.  66 N.J. 510, 518-19, 522 (1975).  We rejected the United States Supreme Court's same-elements test for determining whether successive indictable prosecutions are barred for double-jeopardy purposes and, instead, adopted a rule that barred such prosecutions based on the same conduct.  Id. at 522; see also R. 3:15-1(b); State v. Williams, 172 N.J. 361, 368 (2002); State v. Yoskowitz, 116 N.J. 679, 699-704 (1989).

    Later, we construed our State Constitution's Double Jeopardy Clause to incorporate the same-evidence test -- an alter ego of the same-conduct test -- to bar successive prosecutions involving non-indictable offenses, see State v.

1

De Luca, 108 N.J. 98, cert. denied, 484 U.S. 944, 108 S. Ct. 331, 98 L. Ed. 2d 358 (1987); State v. Dively, 92 N.J. 573 (1983), and we adopted a court rule requiring the joinder of non-indictable offenses with indictable offenses arising from the same conduct, R. 3:15-3. Our case law makes clear that we have embraced the same-conduct test through our constitutional rulemaking authority, see Williams, supra, 172 N.J. at 367-68, and through our State Constitution's Double Jeopardy Clause, see De Luca, supra, 108 N.J. at 107-08. We also have determined that notions of fundamental fairness may bar successive prosecutions based on the same conduct. See Yoskowitz, supra, 116 N.J. at 704-09.

Today, the majority reverses course and constricts the interpretation of our State Constitution's Double Jeopardy Clause to bar successive prosecutions based solely on the same-elements test, thus aligning itself with the federal double-jeopardy standard, which has proven to be inconstant. This move is at complete odds with the architecture of our joinder rules and double-jeopardy jurisprudence. Despite today's decision, our court rules requiring the joinder of all offenses arising from the same conduct remain intact, and we have already determined that the failure to join indictable offenses arising from the same conduct, as required by Rule 3:15-1(b), will result in the dismissal of a second prosecution. Williams,

supra, 172 N.J. at 368.

The immediate impact of the majority's decision is that our citizens will no longer have enhanced double-jeopardy protection for non-indictable offenses. In such cases, only the same-elements test, not the same-conduct test, will bar successive prosecutions.

Thus, if a defendant is acquitted of possession with intent to distribute drugs, he cannot afterwards be prosecuted for the disorderly persons offense of possession because both offenses share the same elements. However, if as occurred here, the possession charge is amended to the disorderly persons offense of loitering to possess or distribute drugs, the second prosecution can proceed because the possession-with-intent-to-distribute and drug loitering charges do not share the same elements. According to the majority, the second prosecution is not barred even though the defendant possessed the same drugs, on the same street corner, at the same time.

The majority concedes that this result might well be fundamentally unfair. There is no sound reason to alter a workable constitutional doctrine to one that could lead to unjust outcomes and that would require the remedy of the fundamental-fairness doctrine. Notably, the majority makes clear that fundamental fairness is not offended if the defendant is acquitted of disorderly drug loitering and then prosecuted

3

for an indictable offense of possession arising from the same conduct.

Additionally, under the majority's new double-jeopardy paradigm, the State can prosecute an accused for the disorderly persons offenses of possession of drugs, possession of drug paraphernalia, and loitering to obtain drugs, all arising from the same conduct, in three separate trials because the three offenses do not share the same elements. This scenario too the majority does not consider to be fundamentally unfair. Countless similar fact patterns can be conjured under the majority's new rule. Until today, such multiple prosecutions would have been barred under our state-law double-jeopardy jurisprudence.

Under the regressive approach adopted by the majority, the State will be the ultimate beneficiary, and the accused will pay the price for the State's failure to join non-indictable offenses. That approach cannot be squared with the principles of fairness that previously animated our double-jeopardy jurisprudence. For those reasons, I respectfully dissent.

I.

The double-jeopardy guarantees of our Federal and State Constitutions protect an accused from multiple prosecutions and

4

multiple punishments for the same offense.[1]  See North Carolina v. Pearce, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076, 23 L. Ed. 2d 656, 664-65 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989); De Luca, supra, 108 N.J. at 102.  The animating principle underlying the Double Jeopardy Clause is that

> the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.
>
> [Green v. United States, 355 U.S. 184, 187-88, 78 S. Ct. 221, 223, 2 L. Ed. 2d 199, 204 (1957).]

The heart of the double-jeopardy issue before us is whether the offense for which defendant was convicted in the first prosecution is the "same offense" for which he was tried in the second prosecution.  See De Luca, supra, 108 N.J. at 102.

The same-elements test -- first adopted by the United States Supreme Court in Blockburger v. United States, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932) -- was the long-

---

[1] The Federal and State Double Jeopardy Clauses provide, no person shall "be subject for the same offence to be twice put in jeopardy of life or limb," U.S. Const. amend. V, and "[n]o person shall, after acquittal, be tried for the same offense," N.J. Const. art. I, ¶ 11.

5

prevailing standard for determining whether a subsequent prosecution was for the "same offense" as in a prior prosecution. See Kirstin Pace, Fifth Amendment -- The Adoption of the "Same Elements" Test: The Supreme Court's Failure to Adequately Protect Defendants from Double Jeopardy, 84 J. Crim. L. & Criminology 769, 772 (1994). Over time, however, the rigidity of that standard came into question. Id. at 772-75.

In 1970, the United States Supreme Court invoked collateral estoppel to bar a subsequent prosecution for the same offense, electing not to apply the Blockburger same-elements test.[2] Ashe v. Swenson, 397 U.S. 436, 443-47, 90 S. Ct. 1189, 1194-96, 25 L. Ed. 2d 469, 475-77 (1970). Justice Brennan, while concurring with the application of collateral estoppel, opined that "same offense" in the Double Jeopardy Clause should be "construed to [mean] the 'same transaction'" -- all the events "grow[ing] out of a single criminal act, occurrence, episode, or transaction." Id. at 453-54, 460, 90 S. Ct. at 1199, 1202, 25 L. Ed. 2d at 481, 484 (Brennan, J., concurring).

---

[2] Ashe v. Swenson involved the robbery of six players in a poker game. 397 U.S. 436, 437, 90 S. Ct. 1189, 1191, 25 L. Ed. 2d 469, 472 (1970). The defendant was prosecuted for the robbery of one of the players and acquitted, apparently, based on his alibi defense. Id. at 438-39, 90 S. Ct. at 1191-92, 25 L. Ed. 2d at 472-73. The United States Supreme Court barred a second prosecution for the robbery of another poker player based on principles of collateral estoppel. Id. at 445-47, 90 S. Ct. at 1195-96, 25 L. Ed. 2d at 467-77.

6

Following Justice Brennan's lead, we rejected the Blockburger standard in 1975 in favor of the "same transaction" or "same conduct" test. See Gregory, supra, 66 N.J. at 518-19. In so doing, we utilized the "broad administrative and procedural powers vested in us by our State Constitution" in Article VI, Section II, Paragraph 3, rather than turn to the Double Jeopardy Clause of Article I, Paragraph 11. Id. at 518.

Gregory involved the sale of a single glassine envelope of heroin to an undercover police officer by the defendant while in his apartment. Id. at 511. The defendant had retrieved the heroin envelope from a stash of similar envelopes in his bathroom's medicine cabinet. Ibid. The State first prosecuted and convicted the defendant of the heroin sale and later charged, prosecuted, and convicted him of possession and possession with intent to distribute the heroin in his medicine cabinet. Id. at 511-12.

Relying on Justice Brennan's concurrence in Ashe v. Swenson, section 1.07(2) of the Model Penal Code, notions of fairness, and the defendant's reasonable expectations, we reversed the drug-possession convictions, concluding that "a defendant shall not be subject to separate trials for multiple offenses 'based on the same conduct or arising from the same criminal episode.'" Id. at 518-19, 522.

Two years after Gregory, we adopted a mandatory joinder

7

rule, which now reads:

> [A] defendant shall not be subject to separate trials for multiple criminal offenses based on the <u>same conduct</u> or arising from the same episode, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction and venue of a single court.[3]
>
> [<u>R.</u> 3:15-1(b) (1977) (amended 1987) (emphasis added).]

The operative language in the Rule is identical to the language in <u>N.J.S.A.</u> 2C:1-8(b) of the Code of Criminal Justice entitled "Limitation on separate trials for multiple offenses." This Court has made clear that it will bar the successive prosecution of indictable offenses arising from the same conduct when the State has failed to join those offenses in accordance with <u>Rule</u> 3:15-1(b). <u>See</u> <u>Williams</u>, <u>supra</u>, 172 <u>N.J.</u> at 368; <u>Yoskowitz</u>, <u>supra</u>, 116 <u>N.J.</u> at 699-704.

## II.

This Court reached a similar result in cases involving the failure to join non-indictable charges by invoking the Double Jeopardy Clause of our State Constitution. <u>See</u> <u>De Luca</u>, <u>supra</u>, 108 <u>N.J.</u> at 101-08; <u>Dively</u>, <u>supra</u>, 92 <u>N.J.</u> at 578-90. In <u>Dively</u>, <u>supra</u>, this Court broadly defined the term "same

---

[3] In 1988, <u>Rule</u> 3:15-1(b) was amended to conform with the language of <u>N.J.S.A.</u> 2C:1-8(b). <u>See</u> Pressler & Verniero, <u>Current N.J. Court Rules</u>, comment on <u>R.</u> 3:15-1 (1988); 120 <u>N.J.L.J. Index Pages</u> 137-38 (1987).

offense" to encompass "any integral part of such offense which may subject the offender to indictment and punishment." 92 N.J. at 581 (emphasis added) (quoting State v. Williams, 30 N.J. 105, 114 (1959)). In that case, in part under the auspices of our State Constitution's double-jeopardy guarantee, we adopted the same-evidence test -- a variant of the same-conduct test -- as a supplement to the same-elements test. See id. at 578, 582-83.

In adopting the same-evidence test, we relied primarily on Brown v. Ohio, 432 U.S. 161, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977), and Illinois v. Vitale, 447 U.S. 410, 100 S. Ct. 2260, 65 L. Ed. 2d 228 (1980), which, like Ashe, cast doubt on the singularity of the Blockburger same-elements test. See Dively, supra, 92 N.J. at 579-82; see also Brown, supra, 432 U.S. at 166 n.6, 97 S. Ct. at 2226 n.6, 53 L. Ed. 2d at 195 n.6 ("The Blockburger test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense."). Vitale suggested that "the Double Jeopardy Clause bars any subsequent prosecution in which the government . . . will prove conduct that constitutes an offense for which the defendant has already been prosecuted." Grady v. Corbin, 495 U.S. 508, 521, 110 S. Ct. 2084, 2093, 109 L. Ed. 2d 548, 564 (1990) (examining Vitale), overruled by United States v. Dixon, 509 U.S. 688, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993).

In De Luca, supra, we applied the same-evidence test in a

9

case involving a driver acquitted of recklessly killing a person with a vehicle -- death by auto. 108 N.J. at 108-11. We held that the State could not prosecute the driver for driving while intoxicated (DWI) if the driver's reckless conduct in the first prosecution was predicated solely on his presumed intoxication. Id. at 108-09. In other words, if the State's sole evidence of recklessness in the death-by-auto case was intoxication, double jeopardy barred the State from prosecuting the driver for DWI. Ibid. We came to that conclusion even though, under Blockburger, death by auto and DWI do not share the same elements. Ibid.

In Dively, supra, we reached a result similar to De Luca in the reverse setting. See 92 N.J. at 582-83. There, we held that a driver who pled guilty to DWI could not be prosecuted for death by auto if the sole basis for his reckless conduct was his intoxication. Id. at 576-77, 582-83. Additionally, in Yoskowitz, supra, we reaffirmed that the same-evidence test was an integral part of our double-jeopardy jurisprudence. 116 N.J. at 691-92.

After De Luca, Dively, and Yoskowitz, we adopted Rule 3:15-3, which provides that "the court shall join any pending non-indictable complaint for trial with a criminal offense based on the same conduct or arising from the same episode." R. 3:15-3(a)(1) (emphasis added). This language parallels the mandatory

10

joiner rule for indictable offenses and presumably provides similar protection from the sort of successive prosecutions condemned in Gregory and Williams.

The enforcement section of Rule 3:15-3 provides that a subsequent prosecution will be barred "as required by statute or by the Federal or State Constitutions." R. 3:15-3(c). The drafters of that Rule knew that, under Dively and De Luca, our State Constitution barred successive prosecutions of indictable and lesser offenses arising under the same conduct that were not joined by the prosecution. Report of the Supreme Court Committee on Criminal Practice 44, 46-47, 52-57 (1988). Therefore, as of 1992, when Rule 3:15-3 became effective, the same-conduct test was the operative double-jeopardy framework for our State with respect to both indictable and non-indictable offenses. See R. 3:15-3 (effective 1992).

Since 1975, the operative double-jeopardy framework in this State has been the "same conduct" test. See Gregory, supra, 66 N.J. at 519-20. Thus, by the time Justice Brennan's same-conduct test became the majority view of the United States Supreme Court in Grady, supra, 495 U.S. at 510, 110 S. Ct. at 2087, 109 L. Ed. 2d at 557, our law had already provided that level of protection for fifteen years.

Therefore, Justice Scalia's 1993 opinion in Dixon, supra, abandoning the same-conduct test and returning to the

11

*Blockburger* same-elements test, was completely at odds with our jurisprudence.  See 509 U.S. at 704, 113 S. Ct. at 2860, 125 L. Ed. 2d at 573 (overruling *Grady*).  Notably, the *Dixon* Court was so deeply divided that it produced five separate opinions.  The Justices disagreed not only about which test would best advance double-jeopardy principles, but also about how a factfinder would determine whether the same-elements test was satisfied.  See generally *Dixon*, *supra*, 509 U.S. 688, 113 S. Ct. 2849, 125 L. Ed. 2d 556.[4]  We do not have to follow the path taken by our federal counterpart, particularly when doing so is in conflict with our own well-established jurisprudence.

### III.

For forty years, we have been broadening the enforcement of our mandatory joinder rules to safeguard defendants from successive prosecution of offenses arising from the same conduct.  *Dively*, *De Luca*, and *Yoskowitz* are well-reasoned precedents of this Court.  The majority has failed to give some "special justification" for sweeping them away, as required by

---

[4] Only Justice Kennedy joined the entirety of Justice Scalia's opinion.  Chief Justice Rehnquist wrote an opinion, joined by Justices O'Connor and Thomas, concurring in part and dissenting in part.  Justice White wrote an opinion, joined by Justices Stevens and Souter (only Part I), concurring in the judgment in part and dissenting in part.  Justice Blackmun wrote an opinion concurring in the judgment in part and dissenting in part.  Justice Souter, joined by Justice Stevens, also wrote an opinion concurring in the judgment in part and dissenting in part.

12

the doctrine of stare decisis. State v. Brown, 190 N.J. 144, 157 (2007) (quoting Dickerson v. United States, 530 U.S. 428, 443, 120 S. Ct. 2326, 2336, 147 L. Ed. 2d 405, 419 (2000)). The majority provides no compelling, much less persuasive, reason -- other than the illusory promise of efficiency -- for withdrawing protection previously guaranteed under our State Constitution and for reversing Dively and De Luca and abrogating much of Yoskowitz. Indeed, the majority is resigned to suggesting possible remedies for the constitutional gap it has opened.

What is the fallout from the majority's ruling? There is now no bar to prosecuting defendants for differently framed non-indictable offenses based on the exact same conduct. The majority suggests that the Blockburger test is superior because it provides the benefit of ease of application. See ante at ___ (slip op. at 16). The Bill of Rights, however, was not intended to make prosecutions more efficient; it was intended to provide greater safeguards to the liberty of our people.

Without changing our Court Rules to allow for the enforcement of Rule 3:15-3(a)(1), or leaving Dively and De Luca intact, a defendant convicted or acquitted of possession with intent to distribute drugs on a particular street corner can be prosecuted again for loitering with intent to distribute drugs on the same street corner. That is so because, although defendant's conduct is the same, the elements of the two

13

offenses are different. Had defendant pled guilty to the disorderly persons possession-of-marijuana charge -- before the municipal court judge amended it to drug loitering -- no one disputes that the State could not proceed with a prosecution for possession with intent to distribute. The double-jeopardy outcome changes only because the possession charge was amended to a similar offense with a similar penalty -- drug loitering, which has different elements than the greater offense. Even if the amendment in this case was for benign reasons, the potential for manipulation in the future should be self-evident.

Under this new regime, double jeopardy will not bar the State from subjecting a public employee, who is acquitted of official misconduct, N.J.S.A. 2C:30-2(a), based on an allegation of stealing, from a second prosecution for disorderly theft, N.J.S.A. 2C:20-2(b)(4), -3(a), based on the same conduct and evidence. That follows because the elements of official misconduct and disorderly theft are different. Additionally, in robbery cases based on alleged force used by a defendant, N.J.S.A. 2C:15-1(a)(1), an acquittal on the robbery will not bar a second prosecution for simple assault, N.J.S.A. 2C:12-1(a), in municipal court. The prosecutions in the reverse order would also be permissible -- without offending the majority's notions of fundamental fairness.

Moreover, the State can consecutively prosecute an

14

individual in municipal court for possession of drugs, N.J.S.A. 2C:35-10(a)(4), possession of drug paraphernalia, N.J.S.A. 2C:36-2, and loitering to obtain drugs, N.J.S.A. 2C:33-2.1(b)(1), all arising from the same conduct, because the elements of the three non-indictable offenses are distinct. Those are but a few examples of the types of successive prosecutions for offenses arising from the same conduct that will be permissible as a result of the majority's decision.

The majority is not compelled to take this backwards step in our jurisprudence. Other jurisdictions have recognized the flaws of relying solely on the same-elements test in the post-Dixon era. See, e.g., Richardson v. State, 717 N.E.2d 32, 49-50 (Ind. 1999) ("[T]he statutory elements test and the actual evidence test, are components of the double jeopardy 'same offense' analysis under the Indiana Constitution."); State v. Cotton, 778 So. 2d 569, 573 (La. 2001) ("In evaluating claims of double jeopardy under [Louisiana law and the Louisiana Constitution], Louisiana courts have used the 'same evidence' test, which . . . is 'somewhat broader in concept than Blockburger.'" (citation omitted)); State v. Gazda, 82 P.3d 20, 22 (Mont. 2003) ("[Montana law] provides criminal defendants with greater protection against double jeopardy than the traditional double jeopardy 'elements' test set forth . . . in Blockburger." (citation omitted)).

15

That other state courts follow Dixon does not make the singular same-elements test superior to the same-conduct test for double-jeopardy purposes. If the majority's approach today were the better one, this Court would never have decided Gregory, Williams, Dively, and De Luca as it did. "In protecting the rights of citizens of this State, we have never slavishly followed the popular trends in other jurisdictions, particularly when the majority approach is incompatible with the unique interests, values, customs, and concerns of our people." Lewis v. Harris, 188 N.J. 415, 456 (2006). Indeed, we have recognized that "[t]he New Jersey Constitution not only stands apart from other state constitutions, but also 'may be a source of individual liberties more expansive than those conferred by the Federal Constitution.'" Ibid. (quoting State v. Novembrino, 105 N.J. 95, 144-45 (1987)). Aligning this Court's interpretation of our State Constitution's double-jeopardy guarantee with the United States Supreme Court's interpretation of its federal cognate provision makes no sense given this Court's decades-long commitment to protecting the accused from the successive prosecution of offenses arising from the same conduct. We should remain true and consistent to the governing principles of our own jurisprudence. We should construe our Double Jeopardy Clause so that it fulfils notions of fundamental fairness. The majority's concession that the amorphous

16

fundamental-fairness doctrine may have to come to the rescue if unjust results arise from its new double-jeopardy rule is an admission of the flawed approach it is taking.

IV.

No one contests that the non-indictable disorderly persons offense of marijuana possession or drug loitering should have been joined with the indictable offense of possession with intent to distribute offense. See R. 3:15-3(a)(1). The appropriate response is not to abandon our double-jeopardy jurisprudence by overruling Dively and De Luca, but rather to enforce more rigorously our mandatory joinder rule, which requires the joinder of offenses arising from the same conduct.

The majority's reversion to the same-elements test backtracks from a path that this Court had set out on forty years ago in Gregory. The majority's new rule will allow the State, with all its resources and power, to pursue repeated prosecutions to convict an accused for the same offense, despite an earlier conviction or acquittal. That rule hollows out the protections previously provided by our jurisprudence and our State Constitution's Double Jeopardy Clause.

For the reasons expressed in this opinion, I respectfully dissent.

17